[Civil No. 877.   Filed November 18, 1905.]

[83 Pac. 362.]

## VALLEY BANK OF PHŒNIX, Defendant and Appellant, v. ELIZABETH E. BROWN, Plaintiff and Appellee.

1. PRINCIPAL AND AGENT—UNAUTHORIZED ACTS OF AGENT—RATIFICATION —BANKS—LOANING DEPOSITOR'S MONEY.—Where a bank without authority loaned a depositor's money, taking a note payable to her, and later informed her of its acts, with an assurance that the note was well secured, while in fact it was insufficiently secured, and the depositor made no investigation, but thereafter accepted interest on the note until the failure of the maker and a discovery of the inadequacy of the security, such action on the part of the depositor, without a full knowledge of all the facts, does not constitute a ratification of the loan.

2. BANKS—ACTION AGAINST TO RECOVER MONEY WRONGFULLY LOANED— EVIDENCE—ADMISSIBILITY.—In a suit by a depositor for the recovery of money loaned without authority upon a security not disclosed upon a plea of ratification, evidence is admissible to show that the goods taken as security were of a perishable nature.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa.

Edward Kent, Judge.   Affirmed.

The facts are stated in the opinion.

C. F. Ainsworth, for Appellant.

The principal upon learning of the acts of the person assuming to act as his agent, and with full knowledge of all the material facts, must within a reasonable time thereafter repudiate such acts, or he shall be presumed to have acquiesced therein and ratified the same.   Mechem on Agency, secs. 155-159.

The rule seems to be well stated in the case of *Saveland* v. *Green,* 40 Wis. 431, where the court says: "The rule as to what amounts to a ratification of an unauthorized act is elementary, and may safely be stated thus: Where a person assumes to act in good faith as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must, within a reasonable time, disaffirm such act, at least in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such authorized act." See, also, *Bronson's Executor* v. *Campbell,* 12 Wall. 681, 20 L. Ed. 436; *Glor* v. *Kelly,* 63 N. Y. Supp. 339, 49 App. Div. 617; *Gold Mining Co.* v. *National Bank,* 96 U. S. 640, 24 L. Ed. 648; *Breed* v. *First Nat. Bank,* 6 Colo. 238; *Kelly* v. *Newburyport Co.,* 141 Mass. 496, 6 N. E. 745.

The ratification of an agent's acts, with knowledge of the circumstances, relates back to the time when such acts were performed, and binds the principal the same as if authority had been given in advance. *United States Express Co.* v. *Rawson,* 106 Ind. 215, 6 N. E. 337; *Kelsey* v. *The National Bank,* 69 Pa. 426.

On the question of pleading due authority and showing ratification, it is well settled that upon proof of ratification the original acts are considered to have been done on due authority, and such allegations of due authority may therefore be proved by showing ratification. *Hoyt* v. *Thompson's Exr.,* 19 N. Y. 207; *Hubbard* v. *Town of Williamston,* 61 Wis. 397, 21 N. W. 295.

J. M. Jamison, for Appellee.

Under the evidence and the finding of the court that there was not previous authority to sign the check, Colonel Christy was a volunteer. In such case evidence to make out a ratification must be strong. It must be such as will clearly establish an intention to ratify. *Ward* v. *Williams,* 26 Ill. 447, 79 Am. Dec. 385; *Searing* v. *Butler,* 69 Ill. 575; *Kelly* v. *Phelps,* 57 Wis. 425, 15 N. W. 385; *Foster* v. *Rockwell,* 104 Mass. 169.

An act of ratification, in order to be sufficient, must be something by which the party, by relying upon it, has been

prejudiced. *Doughday* v. *Crowell,* 11 N. J. Eq. 201; *Star-weather* v. *Goodman,* 48 Conn. 101, 40 Am. Rep. 152; *Whitte-more* v. *Hamilton,* 51 Conn. 153; *Johnston* v. *Berry,* 3 Ill. App. 256.

CAMPBELL, J.—Plaintiff below, appellee here, was a depositor of the defendant bank. In December, 1902, the bank, by its president and manager, drew a check for one thousand dollars against plaintiff's deposit, and loaned that sum to one L. D. McClure, taking a promissory note payable to plaintiff, due in one year, and bearing interest at the rate of ten per cent per annum. McClure was a retail druggist, carrying on business in the city of Phœnix. As collateral security for the loan, he pledged a warehouse receipt for whisky in bond in Kentucky, and agreed to set apart a portion of his stock of goods, to be held by one F. H. Lyman, his attorney, as receiptor. The warehouse receipt was of small value. The goods to be set aside inventoried $1,042.07. A large part of them were of a perishable character. Mr. Lyman receipted for the goods, and saw some of the goods segregated from the stock, but was not requested by the bank to check them over, nor did he do so, nor was he requested to exercise more than a nominal control over them; the actual custody and control remaining in McClure. There was a verbal agreement between McClure and the bank to the effect that, should McClure desire to use any of the goods mentioned in the inventory, he could pay the bank the schedule price and take them. About one month after the loan was made, plaintiff was called to the bank, and told by the president that he had loaned one thousand dollars of her money to McClure on "gilt-edged" security. This was the first knowledge she had of the transaction. She was not told the nature of the security, nor the manner in which it was held. Thereafter McClure paid the interest monthly to plaintiff, who receipted to him for the same. During the month of March, 1903, the cashier of the bank suggested to plaintiff that she had better look over the securities connected with her loan, and handed the papers relating to them to her. These papers, with the exception of the receipt given by Lyman, are not in evidence. She did not examine the papers, but returned them at once to the cashier, who assured her that the securities were per-

fectly good. All of the papers remained with the bank. Some time thereafter, plaintiff attempted to negotiate a purchase of real estate, and told the broker of the McClure note. The broker, in response to her suggestion, and with a view to accepting the note if satisfactory in part payment, examined the note and securities, and declined to accept it; merely telling her that the note was not satisfactory. Shortly before the note became due, McClure failed in business. Investigation disclosed that of the goods supposedly set aside as security for plaintiff but a small portion remained. During this investigation plaintiff learned for the first time the precise nature of the goods pledged, and the conditions under which they were held. Shortly after learning the facts, she notified the bank that she repudiated the act of the bank in making the loan, tendered the interest she had received, offered to indorse the note to the bank without recourse, and demanded payment of the one thousand dollars. The bank refused payment, and this action was brought.

The only question requiring our attention is, Did the plaintiff ratify the action of the bank in making the loan under such circumstances as to be binding upon her? The principles of law involved are clear. ''No doctrine is better settled, both upon principle and authority, than this, that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud.'' *Owings* v. *Hull*, 9 Pet. 607, 9 L. Ed. 246. Speaking through Chief Justice Bigelow in the case of *Combs* v. *Scott et al.*, 12 Allen, 493, the supreme court of Massachusetts say: ''Ratification of a past and completed transaction, into which an agent has entered without authority, is a purely voluntary act on the part of the principal. No legal obligation rests upon him to sanction or adopt it. No duty requires him to make inquiries concerning it. Where there is no legal obligation or duty to do an act, there can be no negligence in an omission to perform it. The true doctrine is well stated by a learned textwriter: 'If I make a contract in the name of a person who has not given me an authority, he will be under no obligation to ratify it, nor will he be bound to the performance of it.'

1 Livermore on Agency, 44. See, also, Paley on Agency, 171, note *o.* Whoever, therefore, seeks to procure and rely on a ratification is bound to show that it was made under such circumstances as in law to be binding on the principal, especially to see to it that all material facts were made known to him. The burden of making inquiries and of ascertaining the truth is not cast on him who is under no legal obligation to assume a responsibility, but rests on the party who is endeavoring to obtain a benefit or advantage for himself. This is not only just, but it is practicable. The needful information or knowledge is always within the reach of him who is either party or privy to a transaction which he seeks to have ratified, rather than of him who did not authorize it, and to the details of which he may be a stranger. We do not mean to say that a person can be willfully ignorant, or purposely shut his eyes to means of information within his own possession and control, and thereby escape the consequences of a ratification of unauthorized acts into which he has deliberately entered; but our opinion is that ratification of an antecedent act of an agent which was unauthorized cannot be held valid and binding where the person sought to be charged has misapprehended or mistaken material facts, although he may have wholly omitted to make inquiries of other persons concerning them, and his ignorance and misapprehension might have been enlightened and corrected by the use of diligence on his part to ascertain them." See, also, Story on Agency, sec. 243; *Wheeler* v. *Northwestern Sleigh Co.,* (C. C.) 39 Fed. 347; 1 Am. & Eng. Ency. of Law, p. 1190.

The trial court found as a fact that the plaintiff was not informed as to the character or value of the securities, and, after a careful consideration of the evidence, we are not prepared to say that it was not justified in so finding. A lack of such knowledge is a material circumstance, and a ratification without it is not binding, unless the ignorance resulted from willfulness and not mere carelessness. The inventory or other papers concerning the collateral held by the bank, with the exception of Mr. Lyman's receipt, are not in evidence, and we cannot say how much information plaintiff would have acquired had she examined them. We think the evidence shows the plaintiff to have been careless, but not willfully ignorant.

Evidence was introduced to show that many of the goods agreed to be set apart as security were of a perishable character. The appellant contends that this evidence was not admissible. We think it was admissible. See *Bank of Owensboro* v. *Western Bank*, 76 Ky. (13 Bush) 526, 26 Am. Rep. 211.

The record discloses no error, and the judgment appealed from will be affirmed.

SLOAN, J., and DOAN, J., concur.