Argued July 3, affirmed July 31, rehearing denied October 6, 1914.

# CHAPMAN v. FIRST NAT. BANK.

(143 Pac. 630.)

**Banks and Banking—Functions and Dealings—Relation With Depositors.**

1. If money is left with a bank to be loaned, the bank is an agent, and not a debtor to the depositor, and if the bank lends the money in good faith and exercises due care, it is not liable in case of a loss.

[As to what transactions deemed to be deposits, and the control of equity over them, see note in 57 Am. Rep. 97.]

**Banks and Banking—Functions and Dealings—Relation With Depositors.**

2. Where a bank depositor requests that a loan be effected of money already on deposit, the honoring of a memorandum check bearing the name of the depositor, as signed by the bank president, makes the act of the president in withdrawing the money the act of the bank itself.

**Banks and Banking—Functions and Dealings—Deposits—Instructions by Depositor.**

3. The declaration of a depositor to the bank president that he would not need all the money in the bank, and if the president would loan it he wanted him to do so, did not authorize the president to sign to a memorandum check the name of the depositor and contemporaneously appropriate the money to his own private use.

**Banks and Banking—Authority of Officers—Ratification.**

4. The act of a bank president in appropriating to his private use money which a depositor has authorized him to loan is not ratified, where the essential facts are not made known to the depositor.

From Douglas: JAMES W. HAMILTON, Judge.

This is an action by W. E. Chapman against the First National Bank of Roseburg, in which judgment was rendered in favor of plaintiff, and defendant appeals.    AFFIRMED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief and an oral argument by *Mr. Carl E. Wimberly.*

Department 2.    MR. JUSTICE McNARY delivered the opinion of the court.

This is an action to recover a deposit of $600. During the time covered by the transaction defendant was a corporation engaged in banking, having its place of business at Roseburg. Plaintiff avows that between the months of October, 1909, and January, 1911, he deposited with defendant, for his own use, benefit and account, the sum of $782.05, and that during the intervening time, he withdrew from the bank $182.05, leaving a balance of $600, which defendant refuses to pay. Defendant in its answer denies the indebtedness and alleges: "That the plaintiff withdrew from said bank the total sum of his deposits therein, to wit, $782.05." Plaintiff's reply, in legal effect, consists of a reaffirmation of the matters asserted in his complaint. At the conclusion of the testimony offered by defendant, the trial judge, in response to a motion interposed by counsel for plaintiff, directed the jury to return a verdict in favor of plaintiff for the full amount demanded. Crystallized, the assignments of error present but one grievance; namely, that the trial court committed a legal wrong in allowing plaintiff's motion for a

directed verdict. Having the laboring oar, defendant offered in evidence a deposition of T. R. Sheridan, president of the bank, through whom the transaction occurred. After being asked if plaintiff said anything about the money on deposit with the bank, the witness said:

"He told me that he did not need all the money in the bank, and if I could loan it, naming the amount—I cannot just now remember how much—that he wanted me to do so.

"Q. What did you do with the money?

"A. I took it and placed my note in an envelope and addressed it in his name and put it in the letter 'C' in the bank vault, just as I did for others for whom I made loans.

"Q. Did the plaintiff know that you had loaned his money for him prior to May 1, 1913?

"A. Yes; for he asked me when we were in the First National Bank Building, and after we removed to the Douglas County National Bank Building he came in and asked me two or three times if I had collected the interest on his money. I told him, 'No,' but I would get it for him."

The witness further deposed that the plaintiff made no objection to the loan, but appeared satisfied when told that the money would draw interest. Defendant's evidence further reveals the fact that the president of the bank drew the money by means of a memorandum check to which he signed plaintiff's name, appending thereunder the letter "T," which is the first initial of his name.

On behalf of defendant, S. A. Sanford was called as a witness, and declares that he was cashier of the bank during the time covered by the controversy, and in answer to the question, "Do you know what was done with the money?" said:

"Yes; it was loaned to Mr. Sheridan.

"Q. Now you may state whether or not any evidence of that loan was given by Mr. Sheridan.

"A. The note of Mr. Sheridan for $600 in an envelope. * *

"Q. Who had control of that envelope in which that note of $600 was placed? Where was it, in the First National Bank?

"A. It was in a pigeonhole where we file all of our customers' papers under the letter 'C.'

"Q. Who had control of it?

"A. It was placed in the bank."

Mr. Sanford further stated that as cashier of the bank, he did not pay the money over to the president on the memorandum check, and that he had no knowledge of the payment of the money until a few months prior to the institution of the action, when plaintiff presented a check drawn against the deposit and demanded payment thereof. As a concluding witness, Mr. Harry Stapleton, testified that he was clerk in the bank at the time of the proceedings in question, and that he talked with plaintiff more than a year after the occurrence, and that plaintiff inquired concerning the return of Mr. Sheridan, and said that "he [Sheridan] had some of his money, and he did not have anything to show for it." On cross-examination the witness said: "Plaintiff did not say that Sheridan had borrowed the money from him." Upon this state of the record, the Circuit Court directed a verdict in favor of plaintiff.

1. The touchstone by which we determine the liability of the defendant is the legal effect of the acts of the president of the defendant bank. Therefore the matter of greatest import in this case is the location of the boundary between individual liability and corporate responsibility. Was the transaction merely a

private affair of Mr. Sheridan, the president of the bank, or was his act that of the bank? The doctrine is proverbial that, if money is left with a bank to be loaned, the bank is an agent of, and not a debtor to, the depositor, but, if the bank lends the money in good faith and exercises due care, it is not liable to the customer in the event of a pecuniary loss: 5 Cyc. 524; *Squires* v. *Monmouth First Nat. Bank*, 59 Ill. App. 134.

2. In this case all admit that the money was on deposit with the defendant bank at the time plaintiff requested that a "loan" be effected, thereby creating the relation between the parties litigant of debtor and creditor. The money being on deposit at the time of its appropriation by the president, the board of directors, as the "mind" of the corporation, having a general superintendency over and the management of the business affairs and transactions of the bank, was bound to know of the relation existing between plaintiff and defendant and the incidental duties flowing therefrom. So defendant, in honoring the memorandum check bearing the name of plaintiff as signed by Sheridan, president of the bank, made the act of the president the act of itself. If Sheridan had converted the money without the bank having received it or without credit being given to plaintiff on its books, the bank would not then be liable. But when it receives funds which go into the bank, it is chargeable with all the knowledge possessed by the president, and is liable for any misappropriation by that officer. The testimony produced on behalf of defendant further shows that the note of the president executed as evidence of the withdrawals of the deposit was placed in a "pigeonhole" where were filed the papers of other customers of the bank.

3. Surely the declaration of the depositor to the president of the bank "that he did not need all the money in the bank, and if the president would loan it that he wanted him to do so," would not be authority sufficient for the president to sign to a memorandum check the name of the depositor and contemporaneously appropriate the money to his own private use.

4. Had the character of the loan been unbosomed to plaintiff, a failure to repudiate the transaction may have constituted a ratification; yet no principle of law is better settled than that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all material facts. If the essential facts are either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud: *Valley Bank of Phoenix* v. *Brown,* 9 Ariz. 311 (83 Pac. 362); *Owings* v. *Hull,* 9 Pet. 607 (9 L. Ed. 246); *Combs* v. *Scott,* 12 Allen (Mass.), 493. In this case ratification is neither pleaded nor proven. We think that, where a person occupying the position of president of a bank appropriates money on deposit to his use, that the knowledge of the officer should be treated as that of the bank, and that the bank is liable to the depositor therefor; otherwise those dealing with the bank would be remediless in case of fraud or misappropriation on the part of an officer: *Smith* v. *Anderson,* 57 Hun, 72 (10 N. Y. Supp. 278); *Town of Concord* v. *Concord Bank,* 16 N. H. 26; 1 Michie, Banks and Banking, § 112.

The judgment must be affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.