**PHOENIX TITLE AND TRUST COMPANY, Appellant,**

v.

**Myles STEWART, Trustee of the Estate of Arthur Peabody and Olive Peabody, Appellee.**

**No. 18819.**

United States Court of Appeals Ninth Circuit.

Oct. 21, 1964.

Rehearing Denied Dec. 1, 1964.

Clague A. Van Slyke, Tucson, Ariz., for appellant-cross appellee Myles Stewart, trustee, etc. and another.

Ashby I. Lohse, John Donahue, Jr., Lohse, Donahue & Bloom, Tucson, Ariz., for appellee-cross appellant Phoenix Title & Trust Co.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

This is a proceeding in bankruptcy to determine the validity of a security interest in specific property asserted by Phoenix Title and Trust Company (Phoenix Title).[1] The referee determined that the asserted security interest is void and ordered the company to turn over to the trustee in bankruptcy property obtained in the exercise of purported rights accorded by such, security interest. On review the district court approved and confirmed the referee's order. Phoenix Title appealed and the trustee cross appealed.[2]

Between July 23 and 26, 1956, Arthur Peabody and Olive Peabody, his wife, executed and delivered to Phoenix Title four instruments. One of these is a deed to Phoenix Title, "as Trustees," to several parcels of real property situated in Pima County, Arizona, subject to certain restrictions, reservations and encumbrances. This deed, which was dated July 23, 1956, and acknowledged July 26, 1956, gives Phoenix Title full power to hold, sell, convey, mortgage or pledge the property "in the same manner as though the Phoenix Title and Trust Company held the said property in fee simple and not as Trustee." The instrument makes no reference to an indebtedness of the Peabodys to Phoenix Title, or to any security interest held by that company for any such indebtedness. Nor does it refer to any other instrument executed or to be executed by the Peabodys as security for the performance by them of any contract with Phoenix Title or others. No beneficiaries are named in the deed nor is there any reference to a trust agreement or the terms thereof.

The second of the four instruments referred to above is a trust agreement between the Peabodys and Phoenix Title, dated July 23, 1956, and acknowledged by the Peabodys on July 26, 1956, and by an officer of the company on July 31, 1956. In this instrument Phoenix Title is designated trustee and the Peabodys are designated beneficiaries. The agreement makes reference to the parcels of real property described in the deed in trust, stating that the trustee has accepted that property to be held in trust upon the terms and conditions and for certain uses as set forth in the trust agreement.

The purposes of the trust, as stated in the agreement, were for the trustee to subdivide, plat, sell and otherwise handle the property upon such terms and conditions as the beneficiaries should instruct. In this agreement the trustee was given no discretionary powers nor any responsibility in handling or managing the property. The settlors remained in possession and control of the

---

1. The proceeding was commenced when Myles C. Stewart, the trustee in bankruptcy of Arthur Peabody and Olive Peabody, his wife, petitioned the referee in bankruptcy for a determination of custody and possession of certain assets, and for a turnover order. Phoenix Title, claiming to be the owner of the property in question and desiring to assert its interest in other property of the bankrupts, filed countering petitions.

2. The trustee is satisfied with the result reached by the district court but thinks the court erred in rejecting an additional ground upon which the referee had relied in reaching the same result. That an appellee may, without taking a cross appeal, urge in support of a judgment any matter appearing in the record although his argument may involve an attack upon the reasoning of the lower court, see Helvering v. Lerner Stores Corp., 314 U.S. 463, 466–467, 62 S.Ct. 341, 86 L.Ed. 343; United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087; 7 Moore's Federal Practice (2d ed.) § 72.05, page 3011.

property with full powers of management.

As in the case of the deed in trust, this instrument contains no reference to an indebtedness of the Peabodys to Phoenix Title, or to any security interest held by the company for any such indebtedness, or to any other instrument executed or to be executed for the Peabodys as security for the performance of any obligation. The agreement provides that all funds arising from the lease or sale of the property held under the trust shall, after the payment of costs, fees, taxes and the like, be paid the beneficiaries on demand.

The third instrument referred to above is a promissory note, dated July 24, 1956, made by the Peabodys to the order of Phoenix Title, in the sum of fifty thousand dollars, payable on or before July 24, 1957, with interest at the rate of six per cent. The note recites that it is secured by a collateral assignment of the Peabodys' beneficial interest in the trust referred to above and of certain other trusts, a policy of life insurance and a pledge of assets.

The fourth instrument is the collateral assignment of beneficial interest, dated July 23, 1956, and acknowledged on July 26, 1956. This assignment refers to the promissory note of July 24, 1956. It provides that, for the purpose of securing payment of that note, all of the rights, powers and privileges of the Peabodys, as beneficiaries under the trust agreement, are assigned, conveyed, transferred and set over to Phoenix Title. The assignment further provides that in the event of default on the part of the Peabodys in the payment of the note, the whole amount of the principal sum and any further amount advanced shall become due and shall be collectible in a suit at law or by foreclosure "as if this collateral assignment of Beneficial Interest were a mortgage."

The deed in trust was recorded on July 31, 1956. None of the other three instruments was recorded.

Midway Lumber Company obtained a mechanic's lien upon the property on December 18, 1956, to secure the payment of $2,415.76. It also obtained a judgment on February 19, 1957 on a claim separate from the lien. On the previous day Tucson Newspapers, Inc., had obtained a judgment against the Peabodys for $1,000. On February 28, 1957, the State of Arizona brought a suit to condemn part of the land described in the deed in trust.

Between April 26, 1957 and April 15, 1958, ten creditors of the Peabodys obtained judgments against them in amounts ranging from $575.00 to $10,-668.23. Also during this period the United States and an agency of the State of Arizona obtained tax liens against the property, a lis pendens was filed, and the property was further encumbered by various deeds and assignments. None of the creditors searched the record and thus learned of the deed in trust, and none of them made inquiry of Phoenix Title as to the nature of that instrument and rights thereunder.

On December 12, 1958, Phoenix Title sued in a state court to foreclose its asserted mortgage lien evidenced by the collateral assignment. On April 15, 1958, a petition for involuntary bankruptcy was filed by creditors of the Peabodys and the latter were, on October 2, 1959, adjudged bankrupt. On January 28, 1960, the bankruptcy court enjoined further proceedings in the foreclosure action.

The condemnation suit resulted in the payment by the state to Phoenix Title, on February 24, 1960, of $26,093.82. The proceeding now before us was commenced before the referee on August 18, 1960.

In approving the order of the referee, the district court held, in effect, that whether the security transaction of Phoenix Title be regarded as a mortgage on real property or upon personal property, the deed in trust, which was the only instrument recorded or filed, did not put subsequent creditors upon inquiry as to the existence of such security interest and was therefore void as to them. Accordingly, the district court concluded,

the security interest of Phoenix Title was voidable under section 70, sub. c of the Bankruptcy Act (Act), Act of July 1, 1898, 30 Stat. 565, as amended, 66 Stat. 429, 430 (1952), 11 U.S.C. § 110, sub. c (1958).[3]

In challenging the determination that the deed in trust did not give notice of the security interest of Phoenix Title, the company relies on Barringer v. Lilley, 9 Cir., 96 F.2d 607.

In that case the only recorded instrument was a warranty deed from Mrs. Barringer to Phoenix Title, conveying to the company certain property in Maricopa County, Arizona. This deed was given pursuant to a transaction whereby Mrs. Barringer sold the property to Thomas J. Tunney, acting for L. D. Owens, Jr., H. C. Dinmore, and S. W. Mills. The sales price was $105,000, twenty thousand dollars of which was paid in cash. Tunney gave Mrs. Barringer a promissory note in the sum of eighty-five thousand dollars for the balance.

In connection with the transaction, Mrs. Barringer, Tunney and Phoenix Title signed a declaration of trust in which the corpus consisted of the property conveyed by the deed and proceeds therefrom. The trust instrument declared that the eighty-five thousand dollar indebtedness, represented by the note, was a first lien upon and was secured by the entire beneficial interest thereunder. The company was named trustee and Mrs. Barringer and Tunney were beneficiaries. Under the instrument, which provided that the land

should be subdivided, improved, and sold, the amount received, less expenses, was to be applied to the credit of Mrs. Barringer until the eighty-five thousand dollar note was paid. Tunney, who was granted such possession of the property as was necessary to carry out his obligations in connection with the sale of the lots, was to receive the remaining proceeds. The trust was to terminate upon sale and conveyance of all the property and the payment of all proceeds and the expenses of the trustee.

Tunney thereafter assigned his rights under the trust agreement to Owens, Dinmore and Mills, and they later assigned their rights to Windsor Square Development Company (Windsor Square), a corporation. The corporation thereafter went into voluntary bankruptcy. Mrs. Barringer filed a claim therein as a secured creditor as to the balance of seventy-four thousand dollars then due on the eighty-five thousand dollar note. The trustee in bankruptcy contested this claim, asserting that the sum due on the promissory note was an unsecured indebtedness, because of the failure to record the declaration of trust. The referee sustained this position and the district court approved the referee's determination.

In reversing, this court stated that, as between the parties, the declaration of trust was a valid mortgage held by Mrs. Barringer upon the property conveyed to Phoenix Title to secure payment of her note. With regard to the rights of the creditors of Windsor Square reference was made to section 969 of the Revised Code of Arizona, which is now

3. The district court expressed a preference for the theory that the security interest of Phoenix Title constituted a real estate mortgage. The court expressed the opinion that the trust was passive and therefore executed by the Statute of Uses. The result, as the district court apparently reasoned, was that the Peabodys had the legal title in the lands in question notwithstanding the trust deed and trust agreement.

The reference to Statute of Uses is to the general rule established by statute, or considered as a part of the common law in most states, derived from the English Statute of Uses, 27 Henry VIII, c. 10 (1535). Under this rule, a dry or passive trust is executed, vesting the legal title in the beneficiary. The Statute of Uses was repealed in England in 1925, 12 and 13 Geo. V, c. 16, § 1(7). See IA Trusts and Trustees, Bogert §§ 206, 208, pages 277, 296; I Scott on Trusts, §§ 67–69, pages 592–598; I Restatement of the Law of Trusts, 2d § 67, pages 181–182. The parties seem to be in agreement that the Statute of Uses is the law in Arizona, and we will assume this to be true.

Sec. 33–412, Arizona Revised Statutes. This section provides, in part, that all mortgages and deeds of trust shall be void as to creditors and subsequent purchasers for value without notice, unless acknowledged and recorded as required by law.

In holding that Mrs. Barringer held a lien valid as against the trustee in bankruptcy, this court, at pages 612–613, said:

"Mere naked possession is not enough. When the creditors were giving credit to Owens, Dinmore, and Mills, if they assumed Owens and his associates to be the owners of the property, the assumption was unwarranted. If inquiry was made by the creditors they would have actual notice of the declaration of trust, else how could Owens explain away the record title in the Title & Trust Company?

"It being established that record title was in the Title & Trust Company, it follows that all creditors were creditors with notice of the fact that Owens and his associates were *not* the owners of the tract, at least so far as the record was concerned—which is notice to all the world." (Emphasis in original.)

\* \* \* \* \*

"When Mrs. Barringer gave the deed to the property to the Title & Trust Company and took the Tunney note for $85,000, precisely the same situation was created as if Owens and his associates had owned the property, borrowed the money and given a deed to the property and a promissory note and declaration of trust to secure repayment. In either case the record title in the Title & Trust Company would be sufficient to put all persons on notice that Owens, Dinmore, and Mills did not own the property or that it was encumbered. Such a deed would then be a conveyance in the nature of a mortgage, with the title in one person subject to being defeated by the performance of a condition."

There are some obvious differences between the facts of Barringer and the facts of the case before us. In Barringer the loan was made by one individual to another, Phoenix Title holding the title for their benefit to effectuate the mortgage arrangement. In our case, Phoenix Title, which held the title, was itself the lender and, considering all four instruments together, held the title to secure its own indebtedness. The deed in Barringer was a warranty deed, whereas a deed in trust is involved in our case. The security interest in Barringer was evidenced by an unrecorded declaration of trust. In our case it was evidenced by an unrecorded trust agreement and a contemporaneous unrecorded collateral assignment of the beneficiaries' interest in that trust agreement. In Barringer the party claiming a lien had no recorded interest in the property. In our case the party claiming a lien had record title under a deed in trust which indicated that the grantee had the same powers as if it held fee simple title.

 Despite these differences in facts, the underlying principles applied in Barringer are equally applicable here. One of these is that, under Arizona law, substantially contemporaneous instruments are to be read together in determining, as between the parties thereto, the nature of the transaction. Applying that principle in Barringer, the court read together the warranty deed and the substantially contemporaneous trust agreement in determining the nature of the transaction involved in that case. Applying the same principle here, we should read together the deed in trust and the substantially contemporaneous trust agreement and collateral assignment in determining the nature of the transaction between the Peabodys and Phoenix Title.

 A second principle applied in Barringer is that, under Arizona law, where the substance of the transaction is that the lender of money holds a claim against the title to real property of the borrower to secure payment of the loan, the transaction will be regarded as a

mortgage upon real property, however the instruments are denominated. In Barringer, consistent with that principle, the court held that since under the warranty deed to Phoenix Title and the contemporaneous trust agreement, the lender, Mrs. Barringer, retained a claim on the title to secure payment, the transaction was in the nature of a mortgage on real property. So, here, under the same principle, by virtue of the deed in trust to Phoenix Title and the contemporaneous trust agreement and collateral assignment, the lender, Phoenix Title, retained a claim on the title to secure payment; therefore the transaction was in the nature of a mortgage on real property.

■ The third principle applied in Barringer is that, under Arizona law, where a debtor is in possession of real property but record title is in another, subsequent creditors have constructive notice that the debtor does not have unencumbered title and, if desirous of extending credit upon the basis of such property are put upon reasonable inquiry as to the outstanding interest held against the debtor therein.

■ Applying that principle in Barringer, this court held that the warranty deed given to Phoenix Title by Mrs. Barringer gave the creditors of Owens and his associates constructive notice that the Owens group did not have title to the property. If they nevertheless desired to deal with the Owens group, who were in possession, the recorded instrument put them on inquiry as to any outstanding interest held in the property. Likewise here, applying the same principle, the deed in trust given to Phoenix Title by the Peabodys provided the creditors of the Peabodys with constructive notice that the Peabodys did not have the title to the property. If they nevertheless desired to deal with the Peabodys, who were in possession, the recorded instrument put them on inquiry as to any interest held, by

virtue of the recorded deed in trust, against the Peabodys.

In either case, such constructive notice deprived the creditors of the right to deal with the debtor on the legal assumption that the latter had an unencumbered, or any, interest in the property. In both cases, therefore, the recording of the instrument of conveyance served the purpose of the Arizona recording statute.

■ It is true that the creditors of the Peabodys, unlike the creditors in Barringer, might assume that since the recorded instrument was a deed in trust, persons other than Phoenix Title might have a beneficial interest in that property. But there was no legally cognizable basis for them to assume that the Peabodys were such beneficiaries.. While the Peabodys were the grantors of the trust no implication arises therefrom that they were the beneficiaries. The beneficiary could just as well have been a relative or a charitable institution. The Peabodys were in possession but this in no sense warranted creditors in assuming, without inquiry, that the Peabodys were the beneficiaries of the trust, thereby defeating the security interest of Phoenix Title. As we said in Barringer, where the recorded title is in another "mere naked possession is not enough."

■ It might be argued that if such creditor had made inquiry to ascertain whether the Peabodys had a beneficial interest in the property, they would have been shown only the unrecorded trust agreement which contained no reference to the note or collateral assignment, and would have reasonably concluded therefrom that the Peabodys had the sole beneficial interest in the property.[4] This argument is based on the assumption that upon reasonable inquiry for the purpose of ascertaining whether the Peabodys had an interest which would warrant the extension of credit, Phoenix Title, as record title holder, would have concealed the true nature of the transaction as evidenced not only by the trust agreement

4. No such inquiry was in fact made.

but by the contemporaneous collateral assignment.

There is no legal warrant for such an assumption. It should be assumed, until the contrary is shown, that such reasonable inquiry would have elicited the truth. See Geyser-Marion Gold-Mining Co. v. Stark, 8 Cir., 106 F. 558, 563. Had such an inquiry been made, and had the existence of Phoenix Title's security interest been concealed, the duty of making a reasonable inquiry would have been satisfied and the company might well have lost its security interest as against prejudiced parties.

█ As indicated above, the security interest held by Phoenix Title was in effect a mortgage upon real property, the trust agreement and contemporaneous collateral assignment serving the same function as did the trust agreement in Barringer.[5] We are therefore not called upon to speculate as to what the situation would have been had the deed in trust and trust agreement been executed on one occasion, and the collateral assignment been executed on a later occasion, thereby giving rise to the question of whether the trust was passive and so executed under the Statute of Uses.

█ What is said above does not bring into question the findings of fact of the referee, as approved by the district court but, rather, the legal conclusions to be drawn from undisputed facts. It follows that Rule 52(a), providing that findings of fact shall not be set aside unless clearly erroneous, is inapplicable.

█ The trustee argues that if Phoenix Title's security interest is not subject to being set aside under section 70, sub. c of the Act, relied upon by the district court, it is in any event subject to being set aside under section 70, sub. e of the Act, 11 U.S.C. § 110, sub. e, relied upon by the referee but not by the district court.

Section 70, sub. e(1) provides that a transfer made or suffered or obligation incurred by a debtor which, under any federal or state law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor having a provable claim, shall be void as against the trustee of the debtor. The trustee argues that the security interest of Phoenix Title is voidable as against creditors of the debtor under both federal and state laws, and therefore, under section 70, sub. e(1), must be set aside upon demand of the trustee.

The trustee has two prongs to this argument. The first has to do with tax liens upon all property and rights to property belonging to the Peabodys, acquired by the United States on August 28, 1957 (to secure $4,268.21), and September 21, 1957 (to secure $2,076.67), pursuant to section 6321 of the Internal Revenue Act of 1954, 68A Stat. 779, 26 U.S.C. § 6321. It is provided in section 6323(a) of that Act, 26 U.S.C. § 6323(a), that, with an exception not here material, a tax lien imposed by section 6321 shall not be valid as against " * * * any mortgagee * * * " until notice of such tax lien has been filed in the manner specified in that section.

Phoenix Title acquired its security interest on July 26, 1956, which was prior to the tax liens in question. But the trustee argues that since the collateral assignment was not recorded, the company's security interest was inchoate insofar as section 6323(a) is concerned; therefore it has no standing as against the Government's tax lien. This being so, the trustee contends, he may, by virtue of section

---

5. The trustee in bankruptcy points out that, under Arizona Revised Statutes, sec. 33–702, every transfer of an interest in property, " * * * other than in trust * * * " made only as a security for the performance of another act, is a mortgage. From this the trustee argues that the deed in trust is not a mortgage and cannot be foreclosed as one. The transfer here, however, was evidenced not only by a deed in trust but also by a contemporaneous collateral assignment. Reading the two together the transfer was not one "in trust," and since it was made only as a security for the performance of another act, namely the payment of the promissory note, it is a mortgage by statutory definition.

70, sub. e(1) of the Bankruptcy Act, assert the same position as that of the Government.

■ The deed in trust, which specified the property involved, was on record prior to the acquisition of the tax liens by the Government. It placed all who desired to deal with the property described therein on inquiry as to the holder of the beneficial interest. Until the contrary is proved, it should be assumed that reasonable inquiry in regard to the beneficial interest would have disclosed that Phoenix Title held a security interest in that property in the amount specified in the promissory note. The identity of the security holder, the property subject to the lien, and the amount of the lien were all certain. The security interest was therefore choate under United States v. Pioneer American Ins. Co., 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770.

■ Phoenix Title, to have the protection of section 6323(a) against the federal liens, must also stand as a "mortgagee" within the meaning of that section. Whether Phoenix Title achieved that status through the security arrangement which it had with the Peabodys is a federal question. Hoare v. United States, 9 Cir., 294 F.2d 823, 825. Applying the test set forth in Hoare, at page 826, if Phoenix Title occupied a position substantially equivalent to that of a mortgagee under a conventional mortgage, it satisfied the requirement of section 6323(a). Our determination that, under the terms of the four instruments Phoenix Title occupied the position of a mortgagee of real property, has already been indicated. It follows that the tax liens are not valid against the security interest of Phoenix Title, and provide no basis for an assertion of rights by the trustee under section 70, sub. e(1) of the Act.[6]

The second contention advanced by the trustee with reference to section 70, sub.

e is based upon the Arizona recording statutes. Since the trustee does not here rely upon the standing of any particular creditor's claim or lien, this is in reality a renewal of the argument advanced with regard to section 70, sub. c of the Act and has already been dealt with above.

Reversed.

---

6. It is therefore unnecessary to consider the argument of Phoenix Title that the trustee's rights under section 70, sub. e of the Act may not be asserted with respect to the standing of federal tax liens pursuant to section 6323(a) of the Internal Revenue Act of 1954.