480 P.2d 671

The **VALLEY NATIONAL BANK OF ARI-
ZONA**, a national banking associ-
ation, Appellant,

v.

**AVCO DEVELOPMENT CO., Inc.**, a Cali-
fornia corporation, Appellee.

**No. 1 CA–CIV 1203.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 17, 1971.

Rehearing Denied March 22, 1971.
Review Denied April 20, 1971.

Snell & Wilmer, by Frederick K. Steiner, Jr., Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellee.

STEVENS, Presiding Judge.

This appeal arises out of an action to quiet title in a contest over the right to tenant rentals. The trial court decided the case in favor of the plaintiff, Avco Development Co., on cross-motions for summary judgment and both parties concede the issues to be issues of law, there being no controversy over the material facts.

The facts will be stated as briefly as possible. On 8 January 1962, Verner Land and Development Company leased a portion of a shopping center that it owned to the American Oil Company for the purpose of operating a service station. The term of the lease was to end on 31 May 1977. Verner was to erect a suitable building and the Valley National Bank, defendant-appellant, loaned him the funds to finance construction. Verner secured the loan made to finance the building of the service station by assigning all rentals from the American Oil Company lease to the Valley National Bank. The assignment was made on 11 September 1962, and was accepted by the American Oil Company. The assignment of the rentals was not recorded at that time.

On 22 July 1965 Verner sold the shopping center property, including the service station portion to Laurel Crest, Inc. Laurel Crest had executed a third mortgage on the

58

entire property to James A. A. Smith, George E. Danielson and Stanley A. Phipps, trustees of Los Angeles Deed and Mortgage Exchange, a bankrupt California corporation, hereinafter referred to as the Smith group. The mortgage and the deed were recorded on 30 July 1965. The mortgage was acknowledged and certified in California in accordance with Sections 1190 and 1190.1 of the California Civil Code. The certification of acknowledgment was not authenticated as provided for in § 33–509 of the Arizona Revised Statutes. There were other mortgages on the property, but a consideration of them is not essential to our determination of this case.

The Smith group filed a foreclosure action on the mortgage they held on 26 May 1966. A *lis pendens* was recorded the next day. A default judgment was entered in the foreclosure action on 13 October 1966 and the property was sold by the Maricopa County Sheriff at a foreclosure execution sale on 23 November 1966. The Smith group was the purchaser. The Sheriff's certificate of sale was recorded on 16 December 1966.

The Valley National Bank then proceeded to record the assignment by Verner to it of the rentals of the American Oil Company lease on 8 February 1967.

Avco Development Co., Inc., the plaintiff-appellee, acquired the property by special warranty deed from the Smith group on 21 December 1967. The deed was also acknowledged and certified in California in accordance with the laws of that state, but the certificate of acknowledgment was not authenticated in accord with A.R.S. § 33–509.

The parties agree that the resolution of the central issue in this case turns on whether the assignment of the right to unaccrued rents on a lease of real property is within the scope of A.R.S. § 33–412, which states:

"§ 33–412. Invalidity of unrecorded instruments as to bona fide purchaser or creditor

A. All bargains, sales and other conveyances whatever of lands, tenements and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years, and deeds of settlement upon marriage, whether of land, money or other personal property, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law, or where record is not required, deposited and filed with the recorder.

B. Such unrecorded instruments, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding."

■ The Courts in Arizona have never expressly ruled upon the issue of whether the right to unaccrued rent on a lease of real property is a hereditament within the meaning of A.R.S. § 1–215, subsec. 25 defining real property as "coextensive with lands, tenements and hereditaments," or if it is a chose in action. Under these circumstances we are instructed to look to the common law for guidance. A.R.S. § 1–201 states:

"§ 1–201. Adoption of common law; exceptions

The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state."

Our research leads us to the conclusion that the right to rent to accrue on a lease of real property is an incorporeal hereditament that is an incident to an estate in land, the transfer of which is the transfer of an interest in realty. While there are some-

jurisdictions that hold that the right to unaccrued rent is a chose in action, see Denver Joint Stock Land Bank of Denver v. Moore, 93 Colo. 151, 25 P.2d 180 (1933); see also 1 H. Tiffany, Landlord and Tenant, § 180(2); cases collected in 75 A.L.R. 271, 272; 49 Am.Jur.2d, Landlord and Tenant § 538, this view is contrary to the common law and is not controlling in Arizona.

Blackstone wrote:

"An incorporeal hereditament is a right issuing out of a thing corporate (whether real or personal) or concerning, or annexed to, or exercisible within, the same.

\* \* \* \* \* \*

In short as the logicians speak, corporeal hereditaments are the substance, which may be always seen, always handled: incorporeal hereditaments are but a sort of accident, which inhere in and are supported by that substance; and may belong, or not belong to it, without any visible alteration therein." 2 W. Blackstone, Commentaries 20.

Blackstone listed rents as one of the ten principal incorporeal hereditaments and stated that they must issue out of lands and tenements corporeal. 2 Blackstone, supra at 20 and 41.

Other commentators on the common law emphasized the similarities between an interest in land and rent: The transferability of rent; rents and title to rent were transferred and litigated in the same manner as titles to land; the landlord was seised of his tenant's services (a form of rent) just as he was seised of the land upon which the tenant resided. 2 F. Pollock and F. Maitland, History of English Law 125, 132, 133 (2nd Ed. 1952). By these authorities and others, the right to rent, "\* \* \* that is, payment of the successive installments as they become due, is, \* \* \* an incorporeal thing of real character \* \* \*." 1 Tiffany, supra. Professor Tiffany went on to point out that there has been a tendency to treat the right to rent as a chose in action but that this treatment involved a departure from the original conception of rent as an interest in land.

■ There is little doubt that the holder of the reversionary interest under a lease of real property may sever his right to unaccrued rent from the reversion and transfer it to the third party in the form of an assignment of the right to collect the rent as it becomes due. Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360 (1926).[1]

In our opinion such a transfer, severing the right to future rents from the reversion, is clearly within the scope of the recording act of Arizona. We are in agreement in this view with other jurisdictions. See McMenamy Investment And Real Estate Co. v. Dawley, 183 Mo.App. 1, 165 S.W. 829 (1914); Winnisimmet Trust Inc. v. Libby, 232 Mass. 491, 122 N.E. 575 (1919); Schmid v. Baum's Home of Flowers, 162 Tenn. 439, 37 S.W.2d 105, 75 A.L.R. 261 (1931); Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788 (1935); First & Citizens Bank of Elizabeth City v. Sawyer, 218 N.C. 142, 10 S.E.2d 656 (1940).

■ Under the common law the right to unaccrued rent on a lease of real property is an incorporeal hereditament which is an interest in land. It is an incident to the reversion held by the landlord which, until severed, is intrinsic in the value of the reversion. The severance of the right to future rent from the reversion changes the nature of that interest in land so fundamentally that to hold an assignment of the right to future rents by the holder of the reversion does not fall within the scope of the recording act would frustrate the purpose of that act. The Supreme Court of Tennessee pointed out in the Schmid case, supra, and we agree, there is the possibility of opening the door to fraud in an unlimited degree. In some cases rents may represent the entire value of the reversion,

1. We are aware that Cashion may be given an interpretation that differs with the current opinion. We believe that the Supreme Court did not decide the precise issue which is our present concern and that Cashion is not controlling.

and a conveyance or assignment of the future rents would be equivalent to a conveyance of the land itself.

■■■ The common law, except as modified by statute or as it becomes unsuited to our local system or conditions is in force in Arizona. Masury & Son v. Bisbee Lumber Co., 49 Ariz. 443, 68 P.2d 679 (1937); McClure v. Johnson, 50 Ariz. 76, 69 P.2d 573 (1937). We hold that Verner's assignment to the Valley National Bank of all of the rents to become due on the American Oil lease was the transfer of a hereditament, a transfer which must be recorded to avoid the sanctions of A.R.S. § 33–412.

■■■ The appellant, Valley National Bank, contends that the appellee, Avco, may not claim the status of a party who holds title under a legally recorded instrument as against a party whose instrument was not recorded until later on the grounds that the instruments under which the appellee claims were never validly recorded in Arizona. Those instruments are the mortgage from Laurel Crest to the Smith group and the deed from the Smith group to Avco. The appellant urges that in order for the instruments to have been legally recorded the acknowledgments taken in California must have been authenticated as provided in A.R.S. § 33–509. A.R.S., Title 33, Chapter 4, Article 5, The Uniform Acknowledgment Act. We do not believe that to be the effect of that Article. A.R.S. § 33–501 states:

"§ 33–501. Acknowledgment of instruments

Any instrument may be acknowledged in the manner and form otherwise provided by law, *or* as provided by this article (Emphasis Supplied.)

It is our opinion that Article 5 of Chapter 4 in Title 33, A.R.S., is permissive and provides an alternative law on acknowledgments. The appellant's contention that A.R.S. § 33–509 and A.R.S. § 33–411 cannot be harmonized is well taken, but we do not believe that it was intended that they should be. While we are not bound

by the interpretation of the Commissioners on Uniform State Laws in their prefatory note to the draft of 1939 of the Uniform Acknowledgment Act, it is highly persuasive and should be adopted unless it is erroneous or contrary to the settled policy of this State. In this we are in agreement with the Supreme Court of Arkansas in the case of Rumph v. Lester Land Co., 205 Ark. 1147, 172 S.W.2d 916 (1943).

■ The 1939 draft Act was the source of the Act as it presently stands in the laws of Arizona, having been first adopted in Laws of 1943, Ch. 80. See also Arizona Code Annotated, 1939, 1952 Supp., § 71–501 et seq. We quote from the Commissioners' prefatory note:

"In the Act adopted there is no attempt to say what instruments shall be acknowledged—the Act merely provides that where by the laws of the State the acknowledgment of an instrument is required to be made, it may be made in the manner and form now provided by the law of the State or in the manner and form as prescribed by the Act. It should be explained to the Legislatures that there is no attempt to repeal the existing laws on the subject but the Act proposed is merely permissive in that an acknowledgment may be made either in the manner and form now provided by the law of the state or in the manner and form fixed by this Act. Thus a modern, uniform Act is being proposed for adoption in those states which desire it, without any attempt to alter or change the existing form and method in the event that form or method should be preferred over that proposed." Uniform Acknowledgment Act, Commissioners' Prefatory Note for 1939 Act, 9 U.L.A. 14 (1957 Ed.).

There is neither explicit or implied repeal of A.R.S. § 33–411 nor any change or modification by A.R.S. § 33–509, and the instruments in question having been acknowledged in compliance with the laws of California were entitled to be recorded in Arizona under the provisions of A.R.S. § 33–411, subsec. C. The appellant offered

no proof that the acknowledgments executed in California were defective under California law. We hold that the recordation in Arizona of the mortgage from Laurel Crest to the Smith group on 30 July 1965 and the deed from the Smith group to the appellee on 28 December 1967 was valid.

■ It follows that the appellee's predecessor in interest, the Smith group, acquired and recorded its interest in the shopping center property without notice, as provided under the recording act, of the claim of the appellant whose interest was not recorded until 8 February 1967.

■ The remaining question is whether the appellee could obtain a title free of appellant's interest from the Smith group which was the purchaser at the Sheriff's foreclosure sale. The law is well settled that the interest of the mortgagee vests at the time of the execution of the mortgage. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963); W. W. Planning, Inc. v. Clark, 10 Ariz.App. 86, 456 P.2d 406 (1969). The Smith group took the mortgage subject only to those interests of which it had actual or constructive notice. It is not denied that the Smith group was not put on notice of the assignment of future rents to the appellant by a recordation of that assignment. The appellant contends that there were circumstances other than the record title that were sufficient to charge the Smith group with notice at the time of the execution of the mortgage. These were: (1) The memorandum of lease to the American Oil Company had been recorded. It incorporated by reference the lease agreement which contained language showing that the rentals could be assigned as collateral security for another loan. (2) There was another rental assignment to the different party of record prior to the mortgage from Laurel Crest to the Smith group. (3) American Oil was in possession. If, as a matter of law, these circumstances alone would put a reasonable and prudent man on inquiry to investigate for the existence of a prior unrecorded assignment of future rentals, the Smith group could be charged with notice of the appellant's interest. Phoenix Title & Trust Company v. Stewart, 9 Cir., 337 F.2d 978 (1964); Phoenix Title & Trust Company v. Old Dominion Company, 31 Ariz. 324, 253 P. 435 (1927); Keck v. Brookfield, 2 Ariz.App. 424, 409 P.2d 583 (1965).

■ We believe the rule in Arizona to be that there is a duty to inquire when the land is in possession of an occupant other than the holder of record title, but when that occupant's possession is consistent with record title no duty of further inquiry arises. Roy & Titcomb, Inc. v. Villa, 37 Ariz. 574, 296 P. 260 (1931); Keck v. Brookfield, supra. The American Oil Company's possession was entirely consistent with the lease which was of record and could not have given rise to a duty to inquire into possible interests of other parties.

The other circumstances relied on by the appellant to impose the duty of inquiry on the prospective mortgagee do not meet the requirements of the law. In the case of Valley Bank of Phoenix v. Brown, 9 Ariz. 311, 83 P. 362 (1905) and Keck v. Brookfield, supra, the Courts adhere to the rule that a prospective purchaser may not willfully ignore information at hand which would lead to the discovery of unrecorded adverse claims, but we do not believe that the prospective purchaser must seek out the information on which the duty of further inquiry as a matter of law is invoked. We agree with the Supreme Court of California when it states:

" 'Purchasers may, as a general rule, rely with safety upon the legal presumptions arising from the apparent facts relating to the title, without going in search of possible facts to test or overthrow the presumptions.' " Wilkerson v. Thorp, 128 Cal. 221, 225, 60 P. 679, 681 (1900), quoting from Vassault v. Austin, 36 Cal. 691 (1869).

This view is also stated in 2 Pomeroy's Equity Jurisprudence, § 664, pp. 877, 878 (5th Ed. 1941)

"To constitute such a notice under the recording acts, it must be shown by evidence clear and reliable that the party has received information of facts and circumstances which are sufficient, *in contemplation of law,* to put any reasonably prudent man upon an inquiry, so that the inquiry, if prosecuted with due diligence, would lead to a discovery of the truth. A constructive notice, under this system, can never be a matter of mere possible inference; there must be enough brought home to the knowledge of the party to impose a duty upon his conscience according to the theory of equity jurisprudence." (Emphasis In Original)

The mere possibility that the future rents may have been assigned and the recorded assignment of other rents to another party, taken singly or in totality, would not put a reasonably prudent man on inquiry as to whether the American Oil rents had been assigned.

■ If we view this particular transaction as a purchase, the purchaser-mortgagee took the title of the mortgagor subject only to those interests of which it had actual or constructive notice as of the time the mortgage lien was created and the mortgage ripened into perfect title through the process of foreclosure. There were no obstacles to the *bona fides* of the Smith group, in relation to the appellant's interest, when the mortgage was executed.

■ The purchaser at the Sheriff's foreclosure sale succeeded to the interest of the mortgagor. A.R.S. § 12–1626; Smith v. Rabb, supra. The Smith group acquired the same quality of title which they held under the mortgage.

■ The Smith group had attained the status of a *bona fide* purchaser and could pass that quality of title which it held to a subsequent purchaser. W. W. Planning, Inc. v. Clark, supra. The recording of the appellant's interest, which was an interest in land, after the perfection of the Smith group's title could not impose a bur-

den on the title which the appellee subsequently acquired.

Affirmed.

DONOFRIO and JACOBSON, JJ., concur.