963 P.2d 319

**NORWEST BANK ARIZONA, National Association, a national banking association, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Linda K. Akers, a judge thereof, Respondent Judge,**

**PRAEDIUM GULF, L.P., a Delaware limited partnership, Real Party in Interest.**

No. 1 CA–SA 97–0250.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 19, 1998.

As Amended Feb. 20, 1998.

Review Denied Sept. 24, 1998.

Fennemore Craig by Timothy Berg, Jay S. Kramer and Marc H. Lamber, Phoenix, for Petitioner.

Paul S. Harter, P.C. by Paul S. Harter and Alicia Mykyta, Phoenix, and Messer, Pavek & Reeves, LLC by James R. Everson, Denver, for Respondent/Real Party in Interest.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gary L. Birnbaum and Brian M. Mueller, Phoenix, for Amicus Curiae Land Title Association of Arizona.

## OPINION

THOMPSON, Judge.

¶ 1    This special action questions whether the right to receive rental income through an assignment of rents survived a trustee's sale because the rents had been severed from the other incidents of property ownership that passed in the sale.  The trial court ruled that the assignment of rents was separate from the title interest that was conveyed to Norwest in the trustee's deed, and granted Praedium Gulf the right to rental income. The trial court held that the assignment of rents was incorporated into the original deed of trust securing a note from Praedium's debtor, and that when Norwest bought the property at the trustee's sale the property remained subject to its encumbrances, one of which was the assignment of rents to Praedium.  Norwest challenges this ruling by way of this special action.

¶ 2    We accept jurisdiction and grant relief.  The right to rental income is an appurtenance of the property, and neither the notice of trustee's sale nor the trustee's deed to Norwest excluded the rental income from the conveyance.  When Norwest successfully bid on the property at the trustee's sale and paid the price bid, it was then entitled to the property and all its appurtenances, including rents.

## I.  JURISDICTION

■ ¶ 3    We accept jurisdiction over this matter because Norwest has no "plain, speedy, or adequate remedy by appeal." Rule 1, Arizona Rules of Procedure for Special Actions.  If Norwest has to wait until the duties of the receiver, who was appointed to collect rents for Praedium, are extinguished before appealing the trial court's judgment, it will have to wait until the rental income totals $1.5 million, the amount of Praedium's deficiency on the debt owed to it after the trustee's sale;  this wait will take 5.5 years. This is hardly "speedy," and the trial court ruled that in the meantime Norwest must pay rent itself to the receiver, and give the receiver control over all the rental income. Therefore we take jurisdiction so that Norwest does not have to wait for years to resolve its claim of entitlement to the property and appurtenances.

¶ 4    Further, this court may exercise jurisdiction over issues of statewide importance. *Ingram v. Shumway*, 164 Ariz. 514, 516, 794 P.2d 147, 149 (1990) (accepting jurisdiction of a special action "because it involves a matter of statewide importance, great public interest, and requires final resolution in a prompt manner").  If this ruling is not examined, as the amicus curiae brief submitted by the Land Title Association of Arizona suggests, bids at trustees' sales may be inhibited by uncertainties regarding previous severances and other encumbrances to property.  Buyers may fear that deed language granting "all title, interest, and claim" in property held by "the trustor, trustee, beneficiary, their respective successors in interest and all persons claiming the trust property sold by or through them . . . ." will not convey *all* the appurtenances associated with the property. Ariz.Rev.Stat. Ann. (A.R.S.) § 33–811(C) (1996).  Title insurance companies will be unable to assure purchasers that their property is free of others' interests.  This need to assure buyers at trustees' sales that what they bid for is what they receive is a matter of statewide concern.

¶ 5    Praedium and the trial court claim that Norwest has an adequate remedy through an intervenor complaint in the trial court.  Such an action would result in another trial court ruling that the rents were not conveyed to Norwest in the trustee's deed, which ruling could then be appealed by Norwest.  This additional series of procedural hoops through which Norwest is invited to leap in order to have its ownership claims reviewed here sometime soon would be entirely redundant.  The trial court recognized this when Praedium's counsel proposed the

intervenor complaint as a prerequisite to a final judgment:

> THE COURT: ... It just seemed to me that we were going to go back through a series of procedural steps in order to reach the same point, because the ruling is going to be the same at the end of the rainbow or what we're going to have is inconsistent rulings by this Court whether it's done through a complaint in intervention or not.

¶ 6   It would serve no purpose whatsoever to require Norwest to file some new pleading raising the same issues which the parties have already argued and on which the trial court has ruled.   The issues are squarely presented to us here, and we decide them here.

## II.   FACTUAL AND PROCEDURAL HISTORY

¶ 7   In March 1985, United Bank (predecessor to Citibank) entered into a 25–year lease with Hudson Equities, then-owner of the property.   In December 1985, Hudson Equities sold the property and assigned its lease to E.C. Jackson and recorded on December 31, 1985.   In March 1986, Central Life loaned $4,550,000 to Jackson, who executed a note secured by a deed of trust and security agreement (deed of trust) for the property;   these were recorded contemporaneously with the loan.   The deed of trust was recorded first as document # 86–117765, and an assignment of leases, rents and income (assignment of rents) was recorded as document # 86–117766.

¶ 8   Jackson sold the property to United Plaza.   In March 1992, United Plaza entered into a modification agreement to extend the maturity date on the note to April 1996.   In August 1993, Citibank, successor to United Bank, assigned its rights as tenant under the March 1985 lease to Norwest Bank.

¶ 9   On December 1995, Central Life sold its rights to Praedium.   When United Plaza defaulted on the note, Praedium was the successor beneficiary under the deed of trust.   In January 1996, Praedium asked the court to appoint a receiver to collect the rents and manage the property.   Praedium filed a notice of sale for the property in April 1996.

The notice of sale did not mention the right to rental income.   The trustee conducted a non-judicial sale at public auction;   the only bidders were Praedium and Norwest.   Norwest submitted the higher bid of $3,051,000, and received the trustee's deed of sale on the property.   Norwest's bid was significantly lower than the $4,592,557 Praedium was owed on the note, leaving Praedium with a deficiency of approximately $1.5 million.

¶ 10   After the trustee's sale, the receiver filed a motion requesting that the court approve his final accounting of the receivership funds and a release of the receiver's bond.   Praedium objected, maintaining that its assignment of rents was not sold at the trustee's sale to Norwest.   The parties disagree as to whether the assignment of rents survived the trustee's sale to Norwest.

¶ 11   Norwest intervened in Praedium's receivership action against Jackson and United Plaza, seeking a determination that the rents belonged to Norwest by virtue of the trustee's deed.   In June 1996, the trial court held that Norwest only purchased the right to the property, not the right to the rental income.   In arriving at this decision, the trial judge determined that the two documents, the deed of trust and the assignment of rents, evidenced "equivalent" interests in that the latter was incorporated into the former and both were thus recorded at the same time;   hence, the deed of trust was not prior or otherwise superior to the assignment of rents.   The trial court ordered Norwest to relinquish control over the property to the receiver, who would manage and collect rents and give them to Praedium until the approximately $1.5 million debt was extinguished.   Further, the trial court ordered Norwest to pay rent.   Norwest sought entry of a final judgment with Rule 54(b) certification, but the trial court denied the request, ruling that Norwest could file an intervenor complaint as a plaintiff which would result in a final judgment from which appeal could be taken.   Finally, the trial court denied the receiver's request for a final accounting, since the receivership was to continue.

¶ 12   Petitioner brought this special action to challenge the determination of the superior court that Praedium retained the right to

receive rental income notwithstanding sale of the property to Norwest.

## III.  ISSUE

¶ 13   We grant review on the following issue:

> Were rents part of the property conveyed to Norwest at a trustee's sale, notwithstanding that the deed of trust which authorized the sale upon default on the underlying debt incorporated an assignment of rents to Praedium also securing the same debt, where the sale left a deficiency owed to Praedium on the debt?

## IV.  DISCUSSION

¶ 14   We grant Norwest relief for several reasons:

1. The word "property" includes all usual appurtenances, including rents; the property was sold at a trustee's sale without reservation of the rents and, pursuant to A.R.S. § 33–811(C), the conveyance includes all of the beneficiary's interest in the trust property.

2. Arizona's anti-deficiency statute, A.R.S. § 33–814(D), directs that since Praedium did not maintain an action for a deficiency judgment within the specified time, the proceeds at the trustee's sale are deemed to be in full satisfaction of the original debt.

3. Pursuant to the original deed of trust, the mortgage lien was "first and prior."

4. The language of the deed of trust makes it clear that the assignment of rents would be extinguished upon sale of the property occasioned by default on the debt and conducted in order to remedy the default.

While not in themselves dispositive, two further considerations support the propriety of Norwest's request for relief:

5. The conveyance in the trustee's deed to Norwest of "the real property" at issue in this case is "conclusive against all persons."

6. Public policy requires that purchasers who buy at a trustee's sale be assured that they are getting the whole of the property on which they bid.

¶ 15   We now turn to a discussion of each of these considerations.

### 1.  "Property" includes Rents

¶ 16   The right to rent on a lease of real property "is an incorporeal hereditament that is an incident to an estate in land. . . ." *Valley Nat'l Bank of Arizona v. Avco Dev.*, 14 Ariz.App. 56, 58, 480 P.2d 671, 673 (1971).  In Arizona, real property is defined as "lands, tenements and hereditaments."  A.R.S. § 1–215(30) (1996).  Thus, because the right to rental income is an incorporeal hereditament, and hereditaments are property in Arizona, the right to rental income is real property.

¶ 17   Further, A.R.S. § 33–811(C) outlines what the purchaser at the trustee's sale receives:

> The trustee's deed shall operate to convey to the purchaser the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and all persons claiming the trust property sold by or through them, including all interest or claim in the trust property acquired subsequent to the recording of the deed of trust and prior to the delivery of the trustee's deed.  That conveyance shall be absolute without right of redemption and clear of all liens, claims or interests that have a priority subordinate to the deed of trust and shall be subject to all liens, claims or interests that have a priority senior to the deed of trust.

A.R.S. § 33–811(C) (1996).  If the property conveyed by a trustee's deed is truly "absolute without right of redemption and clear of all liens," Praedium cannot burden the property at issue here by its purported reservation of the right to receive its rental income.

¶ 18   In addition to the land and improvements, the trust deed of which Praedium was the beneficiary granted a security interest in "[a]ll the rents, issues, uses, profits, insurance proceeds and condemnation awards. . . ."  The trust deed does not expressly provide that the right to rental income is separate from the right to the

property; indeed it describes the rents as "belonging or ... pertaining to" the land, improvements, and leases thereon. Praedium argues that the rents constitute an interest separate from the land itself and that the appointment of a receiver pursuant to A.R.S. § 33–702(B) severed rents from the other incidents of property ownership and passed title in the rents to Praedium. This proposition is unsupported. Although A.R.S. § 33–702(B) authorizes enforcement of an assignment of rents through the appointment of a receiver, it does not purport to affect title. "In the case of a receivership on a mortgage foreclosure, the receivership adds nothing to the title or interest of the mortgagee." 65 Am.Jur.2d Receivers § 160 (1972). The United States Supreme Court in a railroad case long ago discussed the effect of a court-appointed receiver's taking possession of a railroad:

> The possession taken by the receiver is only that of the court, whose officer he is, and adds nothing to the previously existing title of the mortgagees. He holds, pending the litigation, for the benefit of whomsoever in the end it shall be found to concern, and in the mean time the court proceeds to determine the rights of the parties upon the same principles it would if no change of possession had taken place.

*Fosdick v. Schall,* 99 U.S. 235, 251, 25 L.Ed. 339 (1878). We reject the notion that the appointment of a receiver affected title, especially where, as here, no document ever expressly severed out the rents from the other incidents of property ownership, and Praedium (or a predecessor of Praedium) at all times up to the trustee's sale was one and the same beneficiary of both the assignment of rents and the deed of trust without differentiation.

¶ 19  Praedium principally relies upon *In re Scottsdale Med. Pavilion,* 159 B.R. 295 (B.A.P. 9th Cir.1993) for its assertion that, upon enforcement of its recorded assignment of rents through the appointment of a receiver, title to the rents was severed from the fee. In that case, a debtor in bankruptcy sought the possession and use of rents it had collected prior to notification from its creditor that, due to the debtor's default, rent payments from the debtor's tenants should go directly to the creditor pursuant to an assignment of rents. The Bankruptcy Appellate Panel held that the assignment of rents which granted an immediate interest in rents to the creditor was "effective" upon execution of the assignment and "perfected" when recorded. 159 B.R. at 299, 300, 302. Therefore, rents actually collected by the debtor and deposited in its bank account constituted "cash collateral" requiring sequestration under the Bankruptcy Code, and the debtor was denied access to the funds. *In re Scottsdale* does not, however, support Praedium's contention that it obtained title to all future rents, separate from the fee, when it enforced the assignment of rents as rents already collected. The case held only that rents actually collected by the debtor and included in the bankruptcy estate could not be disbursed to the debtor because the creditor had an interest in them. Norwest does not claim any interest in rents collected from tenants before the property was conveyed to Norwest, and *In re Scottsdale* does not hold that a creditor's exercise of its rights to rental payments tendered by tenants as they come due severs the right to receive future rents from property which is in all other respects fully conveyed to another.

¶ 20  Praedium cites *Valley Nat'l Bank* for the proposition that the recordation of an assignment of rents gives the assignee priority over a subsequent bona fide purchaser without actual notice of the assignment. But in that case the bona fide purchaser bought the property at a sale after foreclosure of a mortgage that was given by the original property owner subsequent to the time of the assignment of rents. Further, the subsequent mortgage was given to a different entity than was the prior assignment. Thus, the case stands for nothing more than the proposition that an effective and recorded assignment of rents to one person is superior to a lien given later to another person. That is not this case, in which the assignment of rents was not prior to or otherwise superior to the lien which, when foreclosed, brought about the sale to Norwest. When the deed of trust and the assignment of rents were given and recorded in March 1986 as security for the note to Central Life, there was no

indication that the right to rental income was separate from the other rights represented in the property. The rights to the rents and the property passed together from one owner to the next for ten years. Rents were never excepted, reserved, or otherwise mentioned in the notice of sale occasioned by United Plaza's default. Norwest had no reason to believe the rents did not come with their bid on the property. While in *Valley Nat'l Bank* we recognized that rents could be severed from realty, we cautioned that such severance fundamentally "changes the nature of that interest in land" and must be clearly effectuated and noticed because "there is the possibility of opening the door to fraud in an unlimited degree." 14 Ariz.App. at 59, 480 P.2d at 674. We noted that "[i]n some cases rents may represent the entire value of the reversion, and a conveyance or assignment of the future rents would be equivalent to a conveyance of the land itself." *Id.* at 59–60, 480 P.2d at 674–675. Praedium never clearly effectuated, nor gave notice of, a severance of the rents from the realty.

¶ 21 Praedium argues in its pleadings that the notice of sale offered the "Subject Real Property" "as is without any warranties," and that the trustee's deed was given "without warranty express or implied, regarding title to said property or any encumbrances thereon," and that the trustee's deed did not therefore convey "the income interest represented by the Assignment of Rents." That title went to Norwest "without warranties," however, clearly only reflects the directive of the original deed of trust that, in the event of a default and a sale at public auction, the trustee's deed would convey "the property to be sold but without any covenant or warranty, express or implied," and does not indicate that the rents had been effectually severed from the realty by any act of Praedium or its predecessors in interest.

## 2. A.R.S. § 33–814(D)

■ ¶ 22 The anti-deficiency statute, A.R.S. § 33–814(D), allows the proceeds of a trustee's sale to fully satisfy the obligation after the ninety-day period set out in section (A) of the same statute passes. Here, since ninety days passed without Praedium filing

an action for a deficiency judgment, the debt owed to Praedium was satisfied with Norwest's payment of approximately $3 million bid for the property and Praedium is not owed any rental income. Property which secured an obligation that is deemed "satisfied" under statute cannot be burdened with a $1.5 million deficiency.

¶ 23 Praedium asserts that there was no deficiency after the trustee's sale because they still owned the rents and therefore § 33–814(D) is irrelevant. We elsewhere in this opinion hold that the assignment of rents did not survive the trustee's sale, and therefore reject Praedium's assertion that there was no deficiency.

## 3. Mortgage is a "First and Prior" Lien

■ ¶ 24 The deed of trust and security agreement name the mort-gage a first and prior lien on the property in Section 1–3: "*First Lien.* The lien created by this mortgage is a first and prior lien on the Mortgaged Premises . . . ." In light of this provision, the assignment of rents cannot burden the interest which passed to Norwest in a trustee's sale conducted to foreclose the "first and prior lien" created by the deed of trust. Although the assignment of rents was incorporated into the deed of trust, it was not a claim or interest with senior priority to the mortgage lien. Pursuant to A.R.S. § 33–811(C), Norwest's ownership is not subject to the assignment of rents.

## 4. Language of Deed of Trust Extinguishes Assignment of Rents Upon Foreclosure

■ ¶ 25 The assignment of rents provides:

The rights and powers of the Assignee under this Assignment, and the application of the Rents pursuant to this paragraph 5., shall continue and remain in full force and effect both before and after commencement of any action or proceeding to foreclose the Mortgage, after the foreclosure of the Mortgage, and until expiration of the period of redemption from any such foreclosure sale, whether or not any deficiency from the unpaid balance of the Obli-

gations Secured Hereby exists after such foreclosure sale.

Thus, the very terms of the assignment of rents itself clearly indicate that Praedium's interest in rents could not survive the sale to Norwest upon "foreclosure" of the lien securing the obligation to Praedium.

¶ 26 Praedium asserted at oral argument that this provision for expiration of the assignment of rents is solely applicable in the event of judicial foreclosure, and that because Norwest bought at a trustee's sale, the assignment of rents did not expire upon delivery of the trustee's deed.

¶ 27 However, neither logic nor the language of the deed of trust supports this distinction. Praedium offers nothing that would explain why the assignment of rents would survive a trustee's sale but not a sale upon a judicial foreclosure, and the statutory direction that the conveyance to a purchaser at a trustee's sale is "absolute" would seem to rule out any notion that the trustee's deed is less complete than a sheriff's deed upon sale after a judicial foreclosure.

¶ 28 Further, the terms of the deed of trust do not make any distinction between "foreclosure" through judicial action and "foreclosure" through a power of sale. Section 4–5 of the deed of trust is headed *"Foreclosure of Deed of Trust"* and directs that the trustee, upon default, record "a Notice of such breach or default and election to cause the Mortgaged Premises to be sold to satisfy the indebtedness and obligations secured hereby as provided by the laws of the State of Arizona with reference to the foreclosure of deeds of trust." The deed of trust itself refers to "foreclosure" by describing the procedure for a trustee's sale, and we see no basis for concluding that the assignment of rents was meant to survive a trustee's deed but not a deed after judicial foreclosure. To the contrary, the provision for expiration of the assignment of rents clearly indicates an intent that, when the process of "foreclosure" is effectually completed, the assignment of rents is extinguished.

### 5. The Trustee's Deed to Norwest is Conclusive

¶ 29 Upon payment of its bid amount, Norwest received a conveyance without exception of the "real property" thereafter described and which is at issue here. According to the original deed of trust, such recitals in the trustee's deed are "conclusive proof of the truthfulness thereof, and such deed shall be conclusive against all persons as to all matters or facts therein recited." As we have held above, "property" includes "rents," and the conveyance without exception made in the trustee's deed cannot be challenged by Praedium or anyone else.

### 6. Public Policy

¶ 30 The amicus curiae suggests that the trial court's ruling removes the assurances inherent in buying property from a trustee's sale. We agree. Upholding the trial court's ruling would discourage buyers from purchasing at trustees' sales because potential buyers could not then be assured of getting the entire bundle of rights to which they were entitled. In effect, a creditor could cause the "property" to be sold, and receive payment from an unsuspecting buyer ostensibly for the "property," yet claim that significant rights were reserved and not conveyed in the trustee's sale. A.R.S. § 33–808(A) directs the trustee to specify what property the purchaser can expect from the trustee's sale: "The trustee shall give written notice of the time and place of sale legally describing the trust property to be sold...." A.R.S. § 33–808(A) (1996). The policy which animates this provision would be seriously undercut were the trial court ruling here given effect.

### V.  ATTORNEYS' FEES

¶ 31 Because we reverse the trial court's rulings, and Norwest is the successful party, pursuant to A.R.S. § 12–341.01, we award Norwest its attorneys' fees reasonably expended in this special action.

### VI.  CONCLUSION

¶ 32 We reverse and grant relief for Norwest. The right to receive rents is an appurtenance and an incident of ownership of real property. The right to rents was not excepted out of the property conveyed to Norwest

in the trustee's sale, and was conveyed along with the other usual incidents of property ownership by the trustee's deed. Norwest need not pay rent to the receiver, nor to Praedium, and is entitled to the rents paid by the tenants occupying the property. Praedium is not entitled to a receivership to collect rents or manage the property. The respondent trial court is directed to proceed accordingly.

FIDEL, P.J., and GERBER, J., concur.