978 P.2d 110

**PALOMA INVESTMENT LIMITED PARTNERSHIP, an Arizona limited partnership; Paloma Ranch Investments, L.L.C., a Delaware limited liability company, Plaintiff–Appellee, Cross–Appellant,**

v.

**W. K. JENKINS and Mrs. W. K. Jenkins; Robert E. Jenkins and Mrs. Robert E. Jenkins; Karl M. Jenkins and Barbara Jenkins; Hugh C. Jenkins and Mrs. Hugh C. Jenkins; M. Earlene Jenkins and Mr. John Doe Jenkins; Karla Jenkins Wilson and Mr. John Wilson, Defendants–Appellants, Cross–Appellees.**

Nos. 1 CA–CV 97–0402, 1 CA–CV 98–0170.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 13, 1998.

Reconsideration Denied Nov. 27, 1998.

Review Denied May 25, 1999.

Osborn Maledon P.A. by Thomas L. Hudson, Andrew D. Hurwitz, Helen Perry–Grimwood, Phoenix, for Plaintiff–Appellee/Cross–Appellant.

T. Michael Daggett, P.C. by T. Michael Daggett, and Proper & Kirkorsky by Jeffrey M. Proper, Phoenix, for Defendants–Appellants/Cross–Appellees.

**OPINION**

LANKFORD, Judge.

¶ 1   At issue in this action is the final judgment on a seven count amended complaint filed by Paloma Investment Limited Partnership ("Paloma") against W.K. Jenkins and his family (collectively "Jenkins") regarding a Water Rights Agreement ("WRA"). The WRA gave Jenkins a right to a portion of all proceeds gained through the sale, lease or transfer of all water or water rights on Paloma's property, Paloma Ranch ("the Ranch").

¶ 2   After both parties moved for summary judgment, the trial court found for Jenkins on the first count and dismissed the remaining six counts. Jenkins' appeal challenges the inclusion of certain language in the order dismissing the seventh count. Paloma cross-appeals from the judgment for Jenkins on the first count. Both parties also appeal from the partial award of attorneys' fees to Jenkins. We consolidated the appeals and exercise jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

¶ 3   The issue raised by Jenkins on appeal is:

> Did the trial court err when it found that the parties agreed that the WRA applied only to water for use outside of the boundaries of the Ranch?

¶ 4   The issue raised by Paloma's cross-appeal is:

> Did the trial court err when it found that the WRA was a real property interest binding upon Paloma?

¶ 5   The issue raised by both parties is:

> Did the trial court err when it awarded a portion of Jenkins' requested attorneys' fees?

¶ 6   The pertinent facts are as follows. W.K. Jenkins and his son, Robert E. Jenkins, agreed to buy the Ranch, a 67,800 acre parcel of land near Gila Bend in Maricopa County, from Prudential Insurance Company. Jenkins subsequently agreed to assign his interest in the contract to J.S. Stephens and Sons, Inc. ("Stephens"). Stephens was to pay Jenkins $250,000 and enter into a "defin-

itive agreement" including the WRA. This agreement was subsequently executed by these parties.

¶ 7 The WRA allowed either Jenkins or Stephens and any successors and assigns to sell, lease or transfer the water or water rights of the Ranch and entitled Jenkins to twenty percent of all net proceeds from the sale, lease or transfer of the Ranch's water or water rights. The only expressed exception to this agreement was for water or water rights sold, leased or transferred to parties "for farm irrigation purposes only, and only on [the Ranch]."

¶ 8 Stephens subsequently assigned his rights as buyer to Maricopa Land Company ("Maricopa"). Prudential, Jenkins, Stephens and Maricopa executed an amendment to the Prudential–Jenkins sale agreement, recognizing the assignment from Jenkins to Stephens and the subsequent assignment from Stephens to Maricopa. Maricopa agreed to adopt all the previous terms and conditions of the Prudential–Jenkins sale agreement and of the Jenkins–Stephens WRA. The seller, Prudential, and the new buyer, Maricopa, agreed to complete the transfer of all water rights within thirty days of sale. Prudential also conveyed the Ranch by special warranty deed and the water and water rights by quit claim deed to Maricopa. These deeds and the WRA were recorded at the Maricopa County Recorder's Office on the same day.

¶ 9 Three months later, Maricopa sold the Ranch to Paloma pursuant to a special warranty deed. A quit claim deed recorded later shows that Paloma also purchased the water and water rights. Although Paloma did not participate in the negotiations and agreements among Prudential, Jenkins, Stephens and Maricopa, and though there was no mention of the WRA in the deeds from Maricopa to Paloma, Paloma acknowledged for purposes of its summary judgment motion that it knew of the WRA.

¶ 10 Paloma initiated this action by filing a three count complaint against Jenkins and Transamerica Title Company. The first count, the only claim against Jenkins, was to quiet title and challenged the validity of the WRA. Paloma moved for summary judgment against Jenkins on that count only. Jenkins

also moved for summary judgment, alleging that the WRA was valid as a deed, mortgage, equitable mortgage, lien or covenant running with the land. Jenkins also asserted that the WRA was binding on Paloma because Paloma had already admitted that it had had notice of the WRA when it purchased the Ranch.

¶ 11 Judge Thomas O'Toole issued a minute entry order denying Paloma's motion and granting Jenkins' motion. He found that though the WRA was not a deed, it was binding upon Paloma. He determined that the documents from Prudential, Jenkins, Stephens and Maricopa clearly evidenced an intention to create a covenant running with the land. He decided that Paloma had had constructive notice of the recorded WRA and was bound by it. He concluded that the WRA was a "valid, mortgage, equitable mortgage, and/or lien on the water rights in Paloma Ranch." He explained that the WRA was a mortgage because it "constituted a valid transfer of an existing interest in real property and was also security for performance of certain conduct," that is, the WRA established a lien on the water and water rights to enforce the payment provision. Judge O'Toole's ruling was later incorporated into the final judgment entered by Judge Frank T. Galati at the conclusion of the case.

¶ 12 After Judge O'Toole issued his order, Paloma filed an objection to the entry of judgment due to the presence of other parties and its pending motion for leave to amend its complaint. Jenkins moved to enter judgment and objected to the amendment. The trial court declined to enter judgment at that time and granted Paloma leave to file an amended complaint. The new complaint added parties and claims. Litigation concerning other parties to the action ensued and ultimately a settlement was reached.

¶ 13 Paloma then filed a motion for leave to amend a second time. The trial court granted that motion as well and Paloma filed a second amended complaint, lodged solely against Jenkins. The complaint had seven counts. The first count sought to quiet title, as did the original complaint. The six new counts were: Count Two: breach of con-

tract; Count Three: failure to release property according to contract; Count Four: unreasonable restraint on alienation; Count Five: reformation of the contract; Count Six: commercial frustration; and Count Seven: declaratory relief regarding a minimum sale/minimum price provision in the WRA.

¶ 14 Responding to the first count, Judge Galati adopted Judge O'Toole's earlier interlocutory ruling that the WRA bound Paloma as a valid mortgage, equitable mortgage, or lien, and a covenant running with the land. Counts Two, Three, Four, and Five were dismissed apparently because Judge Galati found that Jenkins had stipulated that the WRA had only limited scope. The court expressly used that stipulation to dismiss Count Seven. Count Six was dismissed pursuant to stipulation by Paloma.

¶ 15 The dismissal is best understood within the framework of Paloma's Count Seven. Count Seven asked for declaratory relief interpreting a minimum sale/minimum price provision of the WRA. Specifically, Paloma alleged that Jenkins claimed that the WRA prohibited (1) the sale, lease or transfer of any portion of the Ranch along with its appurtenant water rights for less than 2500 acre feet of water and (2) the sale, lease or transfer of water rights appurtenant to any portion of the property for less than $1000 per acre foot, adjusted annually to the Consumer Price Index. This issue had arisen because of a proposed sale of land and water rights to a third party by Paloma for less than the minimums set by the WRA. The court dismissed Count Seven when it found that the parties agreed that the WRA applied "only to the sale, lease or transfer of water or water rights for use outside the boundaries of the Ranch." Because the proposed buyer would use the water within the boundaries of the Ranch, the issue was declared moot.

¶ 16 Jenkins' appeal centers on the court's finding that he had agreed that the WRA was limited to transfers of water for use off the Ranch. In his response memorandum, Jenkins had stated, "Mr. Jenkins testified, as the Water Rights Agreement provides, that the Water Rights Agreement applies only when water is used off the Ranch." In its reply memorandum, Paloma characterized this statement as a concession by Jenkins. Using similar language, the trial court characterized the statement as a stipulation and used it to resolve Count Seven.

¶ 17 Jenkins now contends that the statement was made in error. However, Jenkins never objected to the use of the statement even though Paloma's reply memorandum expressly relied on the statement. In oral argument on appeal, Jenkins' counsel admitted that no objection was made. New arguments may not be raised for the first time on appeal. *ABC Supply, Inc. v. Edwards,* 191 Ariz. 48, 50, 952 P.2d 286, 288 (App.1996). We will not consider issues not properly presented to the trial court. *Premier Fin. Servs. v. Citibank,* 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995). Because Jenkins failed to preserve the alleged error, we affirm the trial court's ruling on Count Seven.

¶ 18 We now address the issue raised by Paloma's cross-appeal. Paloma contends that the trial court erred in finding that the WRA bound Paloma. It argues that because no real property interest was transferred to Jenkins in the WRA, Jenkins has no rights against the successor owners of the Ranch. Specifically, Paloma states that the WRA was not a mortgage, equitable mortgage or lien as the trial court found. Even if the WRA were a real property interest, Paloma argues, the WRA is not a covenant that runs with the land because it fails to "touch and concern" the land and because there is no privity. *See Choisser v. Eyman,* 22 Ariz. App. 587, 589, 529 P.2d 741, 743 (1974) (listing requirements for a covenant to run with the land and bind future owners).

¶ 19 We agree that the WRA was not a mortgage, an equitable mortgage or a lien. A mortgage secures the creditor's right to payment. *Johnson v. Home State Bank,* 501 U.S. 78, 82, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); Restatement (Third) of Property § 1.1 (1997). An equitable mortgage and a lien give the same type of security for performance. *See* 53 C.J.S. *Liens* § 3(b) (1987); 59 C.J.S. *Mortgages* § 12 (1998). The WRA did not convey an interest as security for

payment: It conveyed the interest outright. No type of mortgage or lien was involved.

¶ 20    We also agree that the WRA is not a covenant. A covenant involves a promise that burdens the landowner. *See* Restatement of Property § 530 (1944). The WRA contained no covenant by the landowner to pump water or to sell water; it merely gave Jenkins the right to receive a share of the proceeds *if* the water were sold.

¶ 21    Our agreement that the WRA is neither a security interest nor a covenant does not mean that it is not a real property right, however. Those do not exhaust the categories of interests in land.

¶ 22    In general, water rights [1] are property rights. *In the Matter of the Rights to the Use of the Gila River*, 171 Ariz. 230, 235, 830 P.2d 442, 447 (1992). Those rights are interests in real property. *See* 93 C.J.S. *Waters* § 1 (1956). Specifically, the right to percolating groundwater is a hereditament, *Neal v. Hunt*, 112 Ariz. 307, 311–12, 541 P.2d 559, 562–63 (1975), and in Arizona, hereditaments are real property interests. A.R.S. § 1–215(30) (Supp.1997); *Norwest Bank Ariz. v. Maricopa County Super. Ct.*, 263 Ariz. Adv. Rep. 21, 23, 192 Ariz. 240, 244, 963 P.2d 319, 323 (App. 1998).

¶ 23    The transfer of water rights is a conveyance. *See* Restatement of Property § 11 (1936) (defining "conveyance"). *See also* 1 R. Beck (ed.), *Waters and Water Rights* § 7.04(a)(2), at 290 (1991) ("Subsequent buyers are bound by the earlier reservation [of riparian rights] not as a covenant running with the land, but simply because any subsequent grantor has no riparian rights to convey."). The WRA is a conveyance, not a covenant.

¶ 24    We recognize that Jenkins' interest is not to use the water itself, the ordinary form of water rights. Instead, he obtained the right to receive a share of the proceeds upon sale of the water. The parties have not correctly defined this form of property interest.

¶ 25    Jenkins received a royalty interest. This is a common type of interest in natural resources, such as coal, oil, gas, timber and minerals. The right to unaccrued royalties can be an interest in real property when the parties so intend. *See Callahan v. Martin*, 3 Cal.2d 110, 43 P.2d 788, 792 (Cal. 1935); *Luckel v. White*, 819 S.W.2d 459, 463 (Tex.1991); 6 D. Thomas (ed.), *Thompson on Real Property* § 48.07(b) (1994); Martin J. McMahon, Annotation, *Oil and Gas Royalty as Real or Personal Property*, 56 A.L.R.4th 539, 546, 1987 WL 419529 (1987).

¶ 26    Accordingly, we hold that the trial court correctly decided that Jenkins received a real property interest that binds Paloma as a successor owner of the land. Although that interest is a royalty and not a mortgage, the judgment is correct.

¶ 27    The final issue is the award of attorneys' fees. Both parties have appealed the trial court's partial award of attorneys' fees to Jenkins in the amount of $3142. Jenkins appeals because he contends the amount should have been greater. Paloma appeals because it believes Jenkins is not entitled to any fee award. In his original request for $64,052 in attorneys' fees, Jenkins claimed to be the "prevailing" party, entitled to fees under Paragraph 13(A) of the WRA [2] and under A.R.S. section 12–341.01 (1992).[3] Judge Schafer determined that Jenkins was the "successful and prevailing" party based

1.  We recognize that the right is not to the water itself; instead, it is a right to the usufruct of the water. *Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 82, 638 P.2d 1324, 1328 (1981). A usufruct is the right to use and enjoy the profits of property that belongs to another. *Black's Law Dictionary* 1544 (6th ed.1990).

2.  Paragraph 13(A) of the WRA states:

    In the event there is any disagreement between the parties thereto and it is necessary for one of the parties to employ an attorney to enforce the terms and conditions of this Agreement, the prevailing party in any such action shall be awarded, in addition to any damages, injunctive or other relief, its costs, expenses and attorneys' fees.

3.  A.R.S. Section 12–341.01(A) provides:

    In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

on Judge O'Toole's ruling on the first summary judgment, but did not prevail in the proceedings after that ruling. Exercising his discretion under A.R.S. section 12–341.01, Judge Schafer awarded only those fees incurred prior to Judge O'Toole's ruling.

¶ 28   Paloma argues that Jenkins' award should be vacated if Paloma prevails on the appeal or cross-appeal. Paloma also argues that the court should not award fees against it because it was not a party to the WRA.

¶ 29   We first briefly address any award of fees under Paragraph 13(A) of the WRA, noting that Judge Schafer specifically said that he was awarding fees in his discretion under A.R.S. section 12–341.01. Paloma argues that attorneys' fees should not be awarded under the contractual provision because the WRA did not bind it. Paloma is partially correct. Although Paloma is bound by the essential terms of the WRA, the attorneys' fees provision is a covenant that does not meet the four-part test for a covenant running with the land. *See Choisser*, 22 Ariz.App. at 589, 529 P.2d at 743. The attorneys' fee provision does not touch and concern the land; it does not "affect the use, value, or enjoyment of the land itself." *See Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 624 (Utah 1989). Therefore, the attorneys' fee provision is not binding upon Paloma and the trial court correctly declined to award fees pursuant to it.

¶ 30   However, the parties do not dispute that the trial court could award fees under A.R.S. section 12–341.01 as an action arising out of a contract, the WRA. Because the parties agree that the statute applies, we assume without deciding that it does. The trial court's discretion under the statute is broad and we will not reverse such an award if there is any reasonable basis for the exercise of such discretion. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

¶ 31   The court correctly determined that Jenkins was the successful party eligible for a fee award. *See Henry v. Cook*, 189 Ariz. 42, 43–44, 938 P.2d 91, 92–93 (App. 1996). However, the court was not required to award all of the fees incurred by the

prevailing party, or indeed any of those fees. *Associated Indem. Corp.*, 143 Ariz. at 570–71, 694 P.2d at 1184–85. The court properly considered the limited nature of Jenkins' success. *See id.* at 570, 694 P.2d at 1184. While Jenkins established that the WRA bound Paloma, the court determined that the scope of the WRA was narrower than Jenkins had asserted.

¶ 32   Jenkins requests fees on his appeal and Paloma requests fees on its cross-appeal. However, because this case involves an appeal and a cross-appeal, and we are affirming the trial court's judgment, we deem neither party to be successful. *See Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 467, 733 P.2d 652, 664 (App.1986) (court has discretion to determine which party is successful in multiple party litigation); *Bank One, Ariz. v. Rouse*, 181 Ariz. 36, 41, 887 P.2d 566, 571 (App.1994) (court has discretion to determine that no party was successful where verdict was for one party in part and for the other in part and thus there was no "clear successful party"). We deny any award of attorneys' fees. *See General Cable Corp. v. Citizens Utils. Co.*, 27 Ariz.App. 381, 385, 555 P.2d 350, 354 (1976) (affirming trial court's denial of both parties award of costs where claim and counterclaim had been dismissed).

¶ 33   The judgments of the superior court are affirmed.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.