**PARK ELECTROCHEMICAL CORP,**
a New York corporation, et al.,
Plaintiffs—Appellees,

v.

**DELCO ELECTRONICS CORPORA-TION,** a Delaware corporation,
Defendant—Appellant.

Park Electrochemical Corp, a New
York corporation, Plaintiff,

and

Nelco Technology, Inc., an Arizona
corporation, Plaintiff—
Appellant,

v.

Delco Electronics Corporation,
a Delaware corporation,
Defendant—Appellee.

Nos. 01–15326, 01–15690.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Decided May 7, 2003.

Before: NOONAN, BERZON and TALLMAN, Circuit Judges.

MEMORANDUM *

We affirm the jury verdicts on appeal, as well as the denial of Nelco's attorneys fees. We reverse the denial of Nelco's costs. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. The district court did not prejudice Nelco by refusing its request to modify the jury instructions on the breach of contract claim. The additional sentence Nelco requested simply repeated, in slightly different words, the explanation contained in the jury instructions given. That instruction stated that the buyer could not "reduce or eliminate its requirements solely to avoid its contract with the seller." The instruction thereby limited the "legitimate business reason" referred to in the next sentence of the instruction in very much the same manner as the sentence Nelco sought to add. Nelco could not have been prejudiced by the district court's refusal to adopt Nelco's language. *See Swinton v. Potomac Corp.,* 270 F.3d 794, 806 (9th Cir.2001) (absent prejudice from instructional error, new trial not warranted).

2. Because the jury found for Delco on the breach of contract claim, Delco argues, Delco cannot be liable on the good faith claim. Embedded within that argument are two distinct issues:

(a) *Instructional Error*

First, Delco appears to argue that the trial court erred in submitting to the jury distinct instructions on both the breach of contract claim and the breach of good faith claim. Delco, however, never objected to the jury instruction separately setting forth the good faith claim; indeed, Delco offered the instruction. Thus, Delco cannot now complain that the instruction was improper. Fed.R.Civ.P. 51; *see also Deland v. Old Republic Life Ins. Co.,* 758 F.2d 1331, 1336 (9th Cir.1985).

(b) *Inconsistent Verdicts*

Whether Delco's failure to object to the covenant of good faith and fair dealing instruction also waived its right to object to inconsistent verdicts is an issue we need not, and do not, decide. Even if we reach it, Delco's inconsistency claim fails.

Consonant with our Seventh Amendment duty to honor jury verdicts, we must uphold a judgment against a challenge of inconsistent verdicts "if it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence." *Vaughan v. Ricketts,* 950 F.2d 1464, 1470 (9th Cir.1991). Where, as here, Delco has waived any objection to the form of the instruction, we analyze the verdicts in light of the instructions actually given. *Id.* (considering verdicts "in light of the judge's instructions to the jury.") (quoting *Toner v. Lederle Laboratories,* 828 F.2d 510, 512 (9th Cir.1987)).

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

■ Applying this standard, the verdicts can be readily reconciled. The breach of contract instruction spoke to the possibility that Delco breached the extension agreement by deciding to close the circuit board plant and thereby terminate the requirements contract. The breach of good faith verdict, in contrast, spoke in more general terms, requiring that "neither party do *anything* that prevents the other from receiving the benefits to which it is entitled under the contract." (emphasis added).

The jury could have concluded that Delco acted in bad faith in the manner in which it implemented its decision to close the circuit board plant. Evidence supported the conclusion that Delco failed to inform Nelco of the final plant closure decision until March 1998, three months prior to placing its last order, even though Delco came to a final closure decision significantly earlier. Evidence also supported the conclusion that Delco had a good faith duty to provide a longer transition period.

There was also evidence supporting the inference that Nelco was damaged by the shortened transition period. Nelco witness Smoot testified that Nelco did not line up alternate customers nor even begin its attempts to do so until late 1997. In both its opening and closing argument, Delco highlighted this issue, disparaging Nelco for "putting all its eggs in one basket," and for not "trying to take care of what might happen in the eventuality of CBF closing." Rather than blame Nelco for failing to hedge its bets, however, the jury could have concluded that Delco deserved much of the blame, for failing to provide timely notice of its decision to close the plant.

An internal Nelco document further suggested that once Nelco officially learned of the plant closure, it had to scramble to "retool" its factory, acquire new talent,

refocus its sales energy, and do so all with a "sense of urgency." According to Delco's economist, these efforts eventually bore fruit, in that Nelco was able to replace a large portion of the lost Delco business. As it was a permissible inference that Nelco could have replaced Delco volume sooner than it did had it received adequate notice, the jury could properly award Nelco lost profits for the period during which Nelco operated without the benefit of either Delco orders or replacement business. The amount of the jury award—substantially less than Nelco's request for approximately $56 million, representing lost profit for the entire period of the extension contract—supports our reconciliation of the jury verdict.

The breach of good faith verdict is also consistent with the jury's verdict for Delco on Nelco's negligent misrepresentation claim. The instructions relevant to the negligent misrepresentation claim focused on Delco's duty to disclose material facts *prior* to the formation of the extension agreement:

> Concealing the truth of a material matter is a representation of false information where the concealing party has a duty to disclose the truth of the material matter. A party to a contract has a duty to disclose facts *if the party knows that the other party is about to enter into the contract* under a mistake regarding facts basic to the contract ...

(emphasis added). As we have explained, the breach of good faith claim could reasonably rest on Delco's conduct after the formation of the extension agreement.

3. Even if the district court erred in failing to give a limiting instruction regarding certain oral promises Delco allegedly made to Nelco prior to the execution of the extension agreement, that error was harmless. The jury found in favor of Del-

co on the claims related to Delco's pre-extension agreement conduct.

For similar reasons, even if the district court improperly excluded evidence regarding the continuing operation of Delco's Flint plant, that error was harmless. The Flint Plant evidence rebutted Nelco's assertion that Delco had come to a final decision to close the Kokomo circuit board plant prior to the execution of the extension agreement. Because the fraud and negligent misrepresentation verdicts indicate that the jury found in favor of Delco with respect to the pre-extension agreement conduct, Delco suffered no prejudice.

We also find no prejudicial error in the district court's decision to preclude Mr. Weekly from summarizing the factors reducing Mr. Weinstein's damage estimate. The jury was well-equipped to assess the cumulative impact of Weekly's impeachment evidence on its own.

None of Delco's other evidentiary objections require a new trial nor an extended discussion.

■ 4. The district court abused its discretion in refusing to award costs to Nelco. We need not decide whether Arizona or federal law apply to this question. Under Arizona law, the district court has no discretion to deny costs. Under Fed. R.Civ.P. 54(d)(1) "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Rule 54(d)(1) establishes a presumption in favor of awarding costs to the prevailing party. *Association of Mexican–American Educators v. California,* 231 F.3d 572, 593 (9th Cir.2000). The district court may alter this presumption only by "explain[ing] why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Id.*

The district court noted that the issues were close and that Nelco did not prevail on every claim. A partial victory after a well-argued trial is hardly unusual. Nelco's victory was neither nominal nor pyrrhic: Nelco received over $32 million in damages. Under the circumstances, focusing on the fact that Nelco prevailed on only one of four claims and did not recover punitive damages misapprehends the nature of Nelco's victory. The district court therefore abused its discretion in denying costs.

5. The district court did not, however, abuse its discretion in denying Nelco its attorneys' fees. The award of attorney fees is governed by Arizona law. *Kona Enterprises Inc. v. Estate of Bishop,* 229 F.3d 877, 883 (9th Cir.2000). In a contract action under Arizona law, "the court *may* award the successful party reasonable attorney fees." A.R.S. § 12–341.01(A) (emphasis added).

Contrary to the cost rule above considered, the language of this statute is permissive and does not establish a presumption that fees will be awarded. *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181, 1183 (1985); *Wildwood Hills Mobile Home Park v. Arizona Dept. of Build. & Fire,* 180 Ariz. 443, 885 P.2d 131, 138 (App.1994). Rather, the trial court has "broad" discretion to grant or deny a fee request. *Paloma Inv. Ltd. P'ship v. Jenkins,* 194 Ariz. 133, 978 P.2d 110, 116 (App.1999).

The trial court duly considered the factors stated in *Associated Indemnity Corp.,* 694 P.2d at 1184 and *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025, 1049 (1985) *abrogated on other grounds by* A.R.S. § 23–1501 *et. seq.,* and determined that two factors justified its decision to deny Nelco's request. Although the district court did not individually analyze each factor, it need not do so.

*See State Farm Auto. Ins. v. Dressler,* 153 Ariz. 527, 738 P.2d 1134, 1139 (App.1987) (trial court need not state reasons for its ruling on application for discretionary award of attorney's fees).

Although the issue is close, we conclude that the district court did not abuse its broad discretion. *See Main I Ltd. P'ship v. Venture Cap. Constr.,* 154 Ariz. 256, 741 P.2d 1234, 1239 (App.1987) (trial court decision to grant attorneys fees upheld "even if there were other factors that might have supported a decision to deny attorneys fees.")

## CONCLUSION

The verdicts are **AFFIRMED.** The denial of attorney fees is **AFFIRMED.** The denial of costs is **REVERSED AND REMANDED.**

TALLMAN, Circuit Judge, dissenting in part.

Because I believe Nelco was prejudiced by an erroneous jury instruction on the breach of contract claim, I respectfully dissent from Section 1 of the memorandum disposition. Nelco timely objected to the proposed instruction and sought additional language which would have ameliorated the error, satisfying the requirements of Rule 51. *See* Fed. R. Civ. Pro. 51.

The district court instructed the jury on the breach of contract claim as follows:

> In its breach of contract claim, Nelco claims that Delco breached the 1996 extension to the 1994 requirements contract, when Delco stopped purchasing mass laminate from Nelco in May 1998. To establish its breach of contract claim, Nelco must prove by a preponderance of the evidence that Delco did not act in good faith when it stopped purchasing mass laminate from Nelco and that Nel-

co was damaged by Delco's alleged breach.

> "Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. A buyer under a requirements contract may not reduce or eliminate its requirements solely to avoid its contract with seller. *A buyer under a requirements contract acts in good faith if the buyer has a legitimate business reason for eliminating its requirements for the seller's goods.*

The error in this case was instructing the jury that it need only find that Delco had a legitimate business reason for terminating the contract to rule in Delco's favor. At a minimum, the court needed to define "legitimate." As it stood, the instruction erroneously permitted the jury to conclude that *any* business reason for terminating the contract (including the desire for greater profitability) was valid. The instruction effectively created an option contract for Delco, which the case law has uniformly held a requirements contract is not. *See, e.g., Empire Gas Corp. v. American Bakeries Co.,* 840 F.2d 1333, 1340 (7th Cir.1988).

### A

As a matter of common-sense, for the buyer to terminate a requirements contract in good faith, more than some "business reason" must be proffered. Presumably, every buyer is a rational capitalist, and every action taken by the buyer is for the purpose of improving its profit margin. Applying that logic, a business reason will *always* underlie the termination of a requirements contract. The limited case law concerning requirements contracts and the Official Comments to UCC § 2–306 recognize this tautology and hold that for a buyer to terminate a requirements contract in good faith, the buyer must be

motivated by more than a desire for greater profitability.

The leading requirements contract case is *Empire Gas Corp.* 840 F.2d 1333. *Empire Gas* concerned the same issue presented in this appeal: whether a requirements contract is "essentially a buyer's option," allowing the buyer to purchase all of the goods he needs from the seller or none at all. *Id.* at 1334. That court concluded that a requirements contract is not an option contract for the buyer in that the buyer is bound by good faith and may not arbitrarily reduce his requirements to zero. The good faith calculus requires that both the buyer and the seller assume certain risks. "The seller assumes the risk of a change in the buyer's business that makes continuation of the contract unduly costly, but *the buyer assumes the risk of a less urgent change in his circumstances . . . .*" *Id.* at 1340 (emphasis added).

Thus, the exigency of the buyer's change of circumstances is critical when determining good faith. *Id.* The exigency "need not be so great as to give [the buyer] a defense under the doctrines of impossibility, impracticability, or frustration, or under a *force majeure* clause. Yet, although more than whim is required, how much more is unclear." *Id.* (citation omitted). "[A]t a minimum," however, "the reduction of requirements [must] not have been motivated solely by a reassessment of the balance of advantages and disadvantages under the contract to the buyer." *Id.* at 1341.

*Empire Gas* thus stands for the proposition that a buyer must experience some measurable change in circumstances to show that it acted in good faith when it terminated the requirements contract. Several decisions support this common sense recognition of business contracting. *See, e.g., Schawk, Inc. v. Donruss Trading Cards, Inc.,* 319 Ill.App.3d 640, 253 Ill.Dec. 776, 746 N.E.2d 18, 26 (Ill.Ct.App.2001) (noting that "more than minor changes in [the buyer's] economic circumstances is necessary to show good faith"); *Technical Assistance Int'l v. United States,* 150 F.3d 1369, 1372 (Fed.Cir.1998) (explaining that to act in good faith, a buyer must have a "valid business reason" "other than dissatisfaction with the contract"); *Agfa–Gevaert A.G. v. A.B. Dick Co.,* 879 F.2d 1518, 1522 (7th Cir.1989) (buyer may reduce or eliminate requirements in good faith if there is a change in his business); *Tennessee Valley Authority v. Imperial Professional,* 599 F.Supp. 436, 439 (E.D.Tenn. 1984) (noting that courts have generally allowed buyers to eliminate their requirements if there is a "bona fide decrease" in need for the goods); *see also* Official Comment 2 of U.C.C. § 2–306 ("A shut-down by a requirements buyer for lack of orders might be permissible when a shut-down merely to curtail losses would not.").

In sum, the buyer's desire for greater profitability, standing alone, is insufficient to establish that the buyer acted in good faith in terminating the requirements contract. Here, the last sentence of the instruction misleadingly informed the jury that it must rule in favor of Delco if the jury found that Delco terminated the contract in order to enhance its bottom line. That was prejudicial error.

### B

The instruction also failed to consider the interplay between UCC § 1–203 (A.R.S. § 47–1203) and § 2–306 (A.R.S. § 47–2306). Section 1–203 sets forth the parties' general obligation of good faith. For the purposes of § 1–203, good faith is defined as "honesty in fact and the observance of reasonable commercial standards

of fair dealing in the trade." § 2–103(1)(b).[1] Breach of this general obligation of good faith *is* a breach of the contract. *See* Official Comment to § 2–103. In order to comply with this contract, then, Delco was required to (1) be honest in fact, and (2) observe reasonable commercial standards of fair dealing.

In this case the jury instruction obliquely acknowledged the requirements of § 1–203, but was not sufficiently specific, and the last sentence of the instruction effectively obliterated the overarching good faith requirement of § 1–203. The negation of the § 1–203 language was prejudicial error.

The jury should have been instructed that Delco breached the contract if any of the following three things occurred:

(1) Delco was not honest in fact in its dealings with Nelco; or

(2) Delco failed to observe reasonable commercial standards of fair dealing in its performance of the contract; or

(3) The changes in Delco's business circumstances were not substantial enough to validate terminating the requirements contract.

### C

The jury's verdict in favor of Nelco on the breach of the implied covenant of good faith and fair dealing claim demonstrates that the error in the breach of contract instruction was not harmless. On the implied covenant claim, the jury was instructed that "The duty to act fairly and in good faith requires that neither party do anything that prevents the other party from receiving the benefits to which it is entitled under the contract." Certainly, the UCC's

duty of good faith is different from that imposed under the common law. But the jury's verdict suggests that it did not approve of Delco's performance under the contract. This raises a strong inference that the jury did not believe Delco was honest in fact with Nelco and/or Delco did not observe reasonable commercial standards of fair dealing.

### D

The memorandum disposition holds that Nelco was not prejudiced in any event because the breach of contract instruction offered by Nelco "simply repeated, in slightly different words, the explanation contained in the jury instructions given." I respectfully disagree. Nelco proposed adding a sentence to the end of the instruction stating: "A buyer may not eliminate its requirements because of a reassessment of the advantages of the contract." Though perhaps inelegant, at least Nelco's proposed instruction would have informed the jury that a requirements contract is not an option contract in favor of the buyer.

Because the error in this case was not harmless, I would reverse the jury verdict in favor of Delco on the breach of contract claim and remand for a new trial.

---

1. I am assuming that both the parties here are merchants. See § 2–104. For non-merchants, UCC § 1–201(19) governs. That section provides that good faith is "honesty in fact."