NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHAD C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.C., *Appellees*.

No. 1 CA-JV 19-0137
FILED 1-14-2020

Appeal from the Superior Court in Yavapai County
No. V1300JD201880007
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

_____

**J O N E S**, Judge:

**¶1**        Shad C. (Father) appeals the juvenile court's order terminating his parental rights to J.C. (Child). Father argues the Department of Child Safety (DCS) failed to prove by clear and convincing evidence the statutory grounds for severance, and by a preponderance of the evidence that severance was in Child's best interests. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Father and Rochelle W. (Mother) are the biological parents of Child, born in 2009.[1] They shared custody of Child until February 2018, when Mother was arrested for driving under the influence while Child was in the vehicle. Around the same time, Father was receiving emergency medical treatment at Verde Valley Medical Center, where hospital staff observed Father with "track marks consistent with intravenous drug use." Father stated he was willing to be placed "in [an] appropriate detox facility" to address his drug use but decided he would "detox at home" after learning of Mother's arrest. He then contacted another family member to pick up Child.

**¶3**        Because there was no parent available to care for Child, DCS took temporary custody of Child and placed him with a relative (Uncle). In March 2018, DCS filed a petition alleging Child was dependent as to Father on the grounds of neglect and substance abuse.[2] As part of the preliminary

_____

[1]        "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]        DCS also alleged the Child was dependent as to Mother. Child was found dependent as to Mother, and Mother's parental rights were

protective order, the juvenile court ordered Father to: (1) undergo a substance abuse assessment; (2) submit to random urinalysis (UA) testing eight to ten times per month; (3) submit a hair follicle sample for testing by March 9, 2018; (4) comply with prior imposed terms of probation; and (5) participate in supervised visitation with Child. Father was "informed that all missed tests, missed calls, and diluted tests would be considered non-compliant." In April 2018, the juvenile court adjudicated Child dependent as to Father, affirmed the case plan of family reunification concurrent with severance and adoption, and reminded Father to comply with the reunification services.

¶4 Father eventually participated in a substance abuse assessment and a psychological evaluation, completed a "Love & Logic" parenting class, and attended some individual and group therapy sessions for substance abuse at Spectrum Healthcare. During therapy sessions, Father admitted: (1) he first used methamphetamine approximately twelve years earlier and "use[d] methamphetamines about 2 times per week" intravenously until at least February 2018; (2) he first used opiates approximately five years earlier and had last used them in January 2017; and (3) he first used heroin within the past year and, at least until February 2018, "use[d] heroin on a daily basis" through injection.

¶5 Between May and July 2018, Father missed five UA tests. But, he missed most, if not all, of his required testing between August and December and tested positive for heroin and opiates in September. In December, Father tested positive for amphetamines twice, opiates one time, and heroin one time. Father's hair follicle test — submitted eight months after the court-ordered deadline — also tested positive for amphetamines and opiates.

¶6 Meanwhile, the juvenile court granted DCS discretion to allow therapeutic visitation between Father and Child. DCS did not schedule visits because reports indicated that Child feared Father and his behavior.

¶7 In January 2019, Father pleaded guilty to two counts of possession of heroin-related drug paraphernalia committed in December 2018 and January 2019. He was placed on supervised probation for three years and ordered to serve 120 days in jail. The same month, DCS moved

---

terminated in March 2019. She did not appeal the termination of her parental rights and is not a party to this appeal.

to terminate Father's parental rights on the grounds of neglect, substance abuse, and the length of time Child had been in out-of-home care.

¶8            By the time of the March 2019 severance hearing, Father remained incarcerated. Father testified he "chose to get sober" the day he "stepped into prison," had enrolled in a moral recognition therapy and twelve-step program, attended Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings once every two weeks, and had attended counseling meetings at Catholic Charities and Spectrum Healthcare prior to his incarceration.

¶9            The DCS case manager testified that while Father might have been able to participate in some services while incarcerated, he was not able to engage in "intensive inpatient or outpatient treatment" to address his drug use. The case manager noted Father had not protected Child from Mother's neglect and substance abuse and expressed concern that Father would not be able to stop using drugs in an unsupervised setting based on his history of substance abuse. The case manager further testified: Father was unwilling or unable to meet Child's basic needs such as providing supervision, food, clothing, and shelter; that Father had lived in "several different places . . . but was unable to maintain" any permanent residence and was currently incarcerated for drug-related offenses; that Child had been placed in a drug-free environment with Uncle, which provided Child permanency, stability, and safety; and that Child was adoptable.

¶10           Uncle testified that Father had a significant history of substance abuse and that he had tried "on several occasions" since July 2017 to help Father undergo substance abuse treatment. Although Father had admitted he needed help, when it came time to engage in treatment, Father "would bolt" because he "did not want to be contained in a substance abuse program."

¶11           Uncle also testified that Child was "at risk of failing third grade" when he was placed with Uncle. Since that time, Child had "blossomed" by working "really hard," earned second place in a science fair, and been "singing and dancing and playing one of the lead roles" in a school theatre production. Moreover, Uncle and his wife were willing to continue as placement for Child and adopt him if requested.

¶12           After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence termination of Father's parental rights was warranted because Father: (1) had neglected Child or failed to protect Child from neglect; (2) was unable to discharge

parental responsibilities because of a chronic history of substance abuse and the condition would continue for a prolonged indeterminate period; and (3) substantially neglected or willfully refused to remedy the circumstances that caused Child to be in out-of-home placement for nine months or longer. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2), (3), (8)(a).[3] The court also found severance was in Child's best interests by a preponderance of the evidence because Father "failed to work on [his] substance abuse issues," and Child "deserve[d] permanency and stability in a drug-free environment." Thus, the court entered an order terminating Father's parental rights. Father timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

**DISCUSSION**

**¶13** To terminate parental rights, the juvenile court must find clear and convincing evidence to support at least one statutory ground for severance. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The court must also find by a preponderance of the evidence that severance would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *see Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We will affirm the termination order "absent an abuse of discretion or unless the court's findings of fact were clearly erroneous." *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004)). A finding is clearly erroneous if no reasonable evidence supports it. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8 (quoting *Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996)). This Court will not reweigh evidence because the juvenile court, as a direct observer of the participants, is "in the best position to weigh the evidence [and] judge the credibility of the parties." *Id.* (quoting *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987), and citing *JV-132905*, 186 Ariz. at 609).

**I.    Reasonable Evidence Supports the Juvenile Court's Finding that Father Was Unable to Parent As a Result of Substance Abuse.**

**¶14** A parent's rights may be terminated when "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for

---

[3]    Absent material changes from the relevant date, we cite the current version of rules and statutes.

a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).  When severance is sought on this ground, the court must also find that DCS "made reasonable efforts to reunify the family."[4]  *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C.*, 193 Ariz. at 191-92, ¶¶ 31-34).

### A. Reasonable Belief That Chronic Substance Abuse Will Continue

¶15        Father first argues that the juvenile court erred in finding clear and convincing evidence that his substance abuse would likely continue for a prolonged indeterminate period.[5]  Specifically, Father asserts the court's finding is inconsistent with evidence that he had achieved and maintained sobriety throughout the proceedings leading up to and during the severance hearing.  We disagree.

¶16        In determining whether a parent's substance abuse is likely to persist for a prolonged indeterminate period, the juvenile court must:

---

[4]        Father suggests DCS did not make reasonable reunification efforts because it did not facilitate therapeutic visits with Child.  He does not, however, articulate how visits with Child would have improved his ability to parent during a period he was using amphetamines, heroin, and opiates. Moreover, DCS "is not required to provide every conceivable service," *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citing *Maricopa Cty. Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)), or "undertake rehabilitative measures that are futile," *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (citing *JS-5209*, 143 Ariz. at 189).

[5]        Father also argues the juvenile court erred in concluding his substance abuse was likely to continue for a prolonged indeterminate period in the absence of expert testimony on the subject.  He cites no authority for the proposition that A.R.S. § 8-533(B)(3) requires expert testimony on facts such as these, and we find none.  *See, e.g.*, *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378-79, ¶¶ 27-29 (App. 2010) (holding that the juvenile court could reasonably conclude that a parent's drug abuse was likely to continue for a prolonged indeterminate period based on evidence that the parent had a significant history of substance abuse, had recently used drugs, and failed to participate in reunification services designed to address substance abuse).

consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.

*Raymond F.*, 224 Ariz. at 378, ¶ 25 (quoting *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998)). A parent's "temporary abstinence from drugs and alcohol does not outweigh his significant history of abuse or his consistent inability to abstain during [the dependency and termination proceedings]." *Id.* at 379, ¶ 29. Moreover, "drug abuse need not be constant to be considered chronic." *Id.* at 377, ¶ 16. Ultimately, when determining whether to terminate parental rights because of a parent's chronic substance abuse, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. DCS*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (citing *Raymond F.*, 224 Ariz. at 379, ¶ 29).

¶17 The record reflects Father began using illegal drugs more than ten years ago, progressing from methamphetamines to opiates to heroin. Although Father reported he achieved sobriety prior to his incarceration, this claim is belied by his failure to consistently engage in the one service that would confirm his ability and commitment to remain sober: substance abuse testing. On at least three separate occasions, Father tested positive for some combination of heroin, amphetamines, and opiates. His use of illegal drugs continued until he was arrested and incarcerated for drug-related offenses, just three months before the severance hearing. Moreover, while Father asserts that he attended meetings at Catholic Charities, emails from the substance abuse case manager at Catholic Charities indicated she could not "get any kind of a commitment from [Father] about meeting with [her]."

¶18 Father presumably remained sober while serving his jail sentence. He failed, however, to establish his ability to maintain sobriety outside of a custodial setting for *any* portion of the proceedings. Father's short period of abstinence while incarcerated does not outweigh his significant history of drug abuse or demonstrated inability to remain sober outside of a custodial setting. *See, e.g., Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (concluding a parent's eventual efforts toward recovery from substance abuse, beginning eight months prior to the severance hearing, were "too little, too late").

### B.  Inability to Discharge Parental Responsibilities

**¶19**        Father separately argues the juvenile court erred in finding clear and convincing evidence that his substance abuse rendered him unable to parent.[6] To support this argument, Father relies on evidence that he had engaged in some treatment and would have a support system in place as well as access to further AA/NA meetings and parenting classes upon his release.

**¶20**        To warrant severance under A.R.S. § 8-533(B)(3), "the juvenile court must find that Father's drug abuse hinders his ability to be an effective parent." *Raymond F.*, 224 Ariz. at 377, ¶ 19. Within the statute, the term "parental responsibilities" refers to "those duties or obligations which a parent has with regard to his child." *Id*. at 378, ¶ 20 (quoting *Maricopa Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 408-09 (App. 1985). The term "is not intended to encompass any exclusive set of factors but rather . . . establish[es] a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case." *Id*. (quoting *JS-5894*, 145 Ariz. at 409).

**¶21**        The record supports the juvenile court's finding that Father is unable to discharge parental responsibilities because of his history of chronic substance abuse. Child was initially placed in DCS's custody because Father left Child with Mother, an unsafe caregiver who was driving under the influence with Child in the car, while Father was receiving emergency medical treatment in anticipation of entering a detox facility. Thereafter, despite facing the imminent loss of his Child, Father consistently failed to engage in services designed to address his substance abuse and was ultimately incarcerated for two counts of possession of heroin-related drug paraphernalia. These circumstances caused the DCS case manager to opine, among other things, that Father's continuous struggle with polysubstance abuse had affected his ability to provide Child with a stable, permanent home. *See Raymond*, 224 Ariz. at 378, ¶ 22.

**¶22**        We cannot say the juvenile court's findings are inconsistent with the extensive evidence of Father's historical and recent drug abuse and failure to commit to substance abuse services outside of a custodial setting,

---

[6]        Contrary to Father's assertions otherwise, the juvenile court did make an express finding that Father "is unable to discharge parental responsibilities because of a history of chronic abuse of dangerous drugs, [and/or] controlled substances."

thus rendering him unable to effectively parent. We find no abuse of discretion.[7]

## II. Reasonable Evidence Supports the Juvenile Court's Finding That Severance Was In Child's Best Interests.

¶23 Termination of parental rights is in a child's best interests if the juvenile court finds "the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citations omitted); *accord Alma S. v. DCS*, 245 Ariz. 146, 150, ¶ 13 (2018) (citing *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016)).

¶24 Father argues the juvenile court erred in its best-interests determination for several reasons. First, Father argues the court should have explored a guardianship before it ordered severance. However, he admits guardianship "was not discussed as a possibility at trial." Thus, the issue of guardianship, raised for the first time on appeal, is waived. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008) (declining to review arguments not raised in the juvenile court) (citing *Paloma Inv. Ltd. P'ship v. Jenkins*, 194 Ariz. 133, 137, ¶ 17 (App. 1998)).

¶25 Second, Father argues this case "may have had a different outcome" had DCS facilitated visits with Child before he was incarcerated. To be clear, DCS had discretion to allow therapeutic visits but declined to do so because Child was scared of Father, and the record reflects Father continued to abuse drugs. Regardless, the circumstances do not warrant reversal; even if visits had been appropriate and enabled Father to foster a bond with Child, "[t]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)).

¶26 Finally, Father argues the juvenile court's finding that termination "would further the [current case] plan of adoption" is error

---

[7] Because we conclude clear and convincing evidence supports termination of Father's parental rights on the ground of chronic substance abuse, we need not address whether severance was warranted upon other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citing *Michael J.*, 196 Ariz. at 251, ¶ 27, and *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 242 (App. 1988)).

because it amounts to a finding that Child would be "better-off" with Uncle than with Father.[8] However, "[i]t is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L.* 239 Ariz. at 4-5, ¶ 16 (citing *Raymond F.*, 224 Ariz. at 379, ¶ 30). Indeed, "[w]hen a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Id.* at 4, ¶ 12 (citing *Mary Lou C.*, 207 Ariz. at 50-51, ¶¶ 19-21, and *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 378, ¶ 6 (App. 1998)).

¶27 Here, in ruling on Child's best interests, the juvenile court found termination of Father's parental rights would "further the plan of adoption, which would [in turn] provide the child with permanency and stability" since Child's "parents . . . failed to work on the substance abuse issues . . . [that, in part,] caused him to be removed from their custody." Additionally, the court found Child was "residing in an adoptive placement that [wa]s meeting all of his needs" and that Child ultimately "deserve[d] permanency and stability in a drug-free environment." Thus, the court did not merely consider the benefit to Child from his current placement but also took into account Father's history with substance abuse and failure to seek treatment before determining it was not in Child's best interests to delay permanency any longer.

¶28 These findings are supported by the evidence and are sufficient to sustain the juvenile court's determination that severance would benefit Child. Accordingly, the court did not err in concluding severance was in Child's best interests.

---

8       Father also argues the juvenile court failed to consider Father's rehabilitation efforts in its best-interests determination. *See Alma S.*, 245 Ariz. at 151, ¶ 15 (noting "that although the focus of the best-interests inquiry is on the child, courts should consider a parent's rehabilitation efforts as part of the best-interests analysis"). The record reflects, however, that the court considered Father's rehabilitation efforts, acknowledging that Father claimed to have achieved sobriety, but failed to complete UA testing or otherwise "work on the substance abuse issues . . . that caused [Child] to be removed from [the parties'] custody."

## CONCLUSION

¶29        The juvenile court's order terminating Father's parental rights to Child is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA